848 A.2d 104

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Thomas W. DRUCE, III, Appellant.**

Supreme Court of Pennsylvania.

Argued May 15, 2003.

Decided April 29, 2004.

582

Matthew Raymond Gover, Harrisburg, John J. Cunningham, James C. Sargent, Jr., West Chester, for Thomas W. Druce, III, Appellant.

Edward Michael Marsico, Jr., Francis T. Chardo, Harrisburg, for the Com. of PA., Appellee.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## OPINION

Justice EAKIN.

Appellant pled guilty to insurance fraud, leaving the scene of an accident involving death or personal injury, tampering with evidence, and four summary Vehicle Code violations.[1] Dauphin County Court of Common Pleas President Judge Joseph H. Kleinfelter sentenced appellant to six to twelve months for insurance fraud, one to two years for leaving the scene of an accident, and six to twelve months for tampering with evidence, each to run consecutively for an aggregate term of two to four years incarceration, plus $4,500 in fines. Appellant seeks a new sentencing hearing, before a new judge, arguing Judge Kleinfelter should have recused himself from the case.

At approximately 10:30 p.m., on July 27, 1999, appellant, a state legislator from Bucks County, drove his Jeep Grand Cherokee southbound on North Cameron Street and struck Kenneth Cains, who was walking across the road. Cains died from the resulting injuries. Appellant did not stop or attempt to render assistance to Cains, but instead continued driving; he eventually stopped at a convenience store, bought duct tape, and made some repairs to his vehicle.

1. 75 Pa.C.S. § 3742; 18 Pa.C.S. § 4910(1); 18 Pa.C.S. § 4117; Careless Driving, 75 Pa.C.S. § 3714; Driving Vehicle at Safe Speed, *Id.,* § 3361; Immediate Notice of Accident to Police Department, *Id.,* § 3746; and Duty to Give Information and Render Aid, *Id.,* § 3744, respectively.

The next day appellant reported to his insurance company that he had been distracted while using his cellular phone and hit a sign and some barrels on the Turnpike. A few days later, he took the vehicle to a body shop and had it repaired. Soon thereafter, appellant traded in the Jeep, which was resold to an out-of-state resident.

Media coverage of the hit-and-run was extensive. Five months later, the Dauphin County Crime Stoppers Program received an anonymous tip implicating appellant. When questioned by police, appellant admitted he was the driver that killed Kenneth Cains, but insisted he had been distracted by files falling to the floorboard and did not see what he had struck. Appellant claimed he thought he hit a stop sign; he denied any knowledge of hitting Cains. Appellant was charged with homicide by vehicle, insurance fraud, leaving the scene of an accident involving death or personal injury, tampering with evidence, and four Vehicle Code offenses.

The Commonwealth agreed to dismiss the homicide by vehicle charge, and appellant agreed to plead guilty to the remaining offenses. After he accepted appellant's guilty plea, but prior to sentencing, Judge Kleinfelter was interviewed by a member of the Associated Press; eventually the reporter brought up this case and the possible sentences appellant faced. The pertinent portions of the resulting article are as follows:

> Under the agreement with District Attorney Edward Marsico, Druce pleaded guilty to leaving the scene of a fatal accident, insurance fraud and tampering with evidence. A charge of vehicular homicide was dropped, and the deal allows Kleinfelter to set the sentence.

> But despite his guilty plea on the hit-and-run charge, Druce has continued to deny that he knew he hit a person that night or tried to cover it up by lying to his insurance company about the location of the accident.

> "It is very clear that the law makes no reference to a person knowing whether or not they struck a person. It's just not

there," Druce said in a Sept. 21 telephone interview. "I believed I struck a sign."

Kleinfelter called that claim strange. He said most defendants with that view would plead not guilty and stand trial. The judge also said Marsico appeared to get the better end of the plea agreement because "he didn't really give up anything" except a more tenuous vehicular homicide charge. "The whole idea of a hit-and-run charge is it involves personal injury to a person," Kleinfelter said. "When Druce pleaded guilty to that charge, he admitted that he knew he hit somebody."

\* \* \*

"What Druce did really didn't have to do with his office. When you're in a position of public trust and you somehow use that office to feather your nest for personal gain ... then that I think, of course, is a much more serious matter," Kleinfelter said.

\* \* \*

Although some black leaders say Druce was given special treatment by authorities because he is a legislator, Kleinfelter said he won't be pressured to give a tougher sentence. The Harrisburg native says he is sensitive to community concerns but does not believe Druce got favorable consideration.

"Everything that a judge does generally displeases one side or another," he said. "If I had to worry about everyone who is unhappy because of the result ... then there would be a strong possibility that I would compromise my decisions. Fortunately I don't have to do that either in this case or any other."

Hope Yen, *Guilty Plea Perplexes Kleinfelter*, The Patriot News, 10/2/00, at B1, B5.

Following publication of the article in various newspapers throughout the Commonwealth, appellant filed a recusal motion, requesting that Judge Kleinfelter remove himself, and that a judge be assigned from another county. Appellant claimed Judge Kleinfelter's comments demonstrated he har-

bored prejudice and bias towards appellant and could not be impartial during sentencing. Judge Kleinfelter denied the motion. Appellant filed an emergency petition with this Court, requesting we exercise our King's Bench powers, assume jurisdiction over the case, and remove Judge Kleinfelter. *See* 42 Pa.C.S. § 726. With two Justices dissenting, this Court denied the petition.

Before announcing appellant's sentence, Judge Kleinfelter addressed appellant's concerns about his impartiality:

> Any judge, certainly this one, takes any accusation of impartiality (sic) very serious, because if justice is to be anything, it must be first and always impartial. I want you to know, Mr. Druce, that I hold no personal bias, prejudice, or ill-will against you in any measure. In fact, we have never been formally introduced except through these proceedings. . . . So, if I am perplexed over the inconsistency of your claims, Mr. Druce, as against the facts, it's not because I feel any impartiality (sic) towards you, it is because in my mind, which may lack the great sophistication of other legal minds, it doesn't make sense.

N.T., 10/27/00, at 31–32.

Appellant was sentenced as stated above, and his bail was revoked. Appellant filed post sentence motions challenging the appropriateness of his sentence and Judge Kleinfelter's refusal to grant his recusal motion; these were denied. Appellant filed an emergency application for bail with the Superior Court, which was denied. Appellant immediately filed an emergency petition with this Court. We granted the petition and remanded to the Dauphin County Court of Common Pleas for a bail hearing. The matter was assigned to Judge Todd Hoover who set bail at $600,000, and imposed electronic home monitoring and a curfew. Appellant satisfied the bail requirements and was released.

On appeal, the Superior Court concluded that although Judge Kleinfelter's statements to the media appeared to violate Canon 3A(6) of the Code of Judicial Conduct,[2] such a

---

**2.** The Code of Judicial Conduct states:

588

violation did not *per se* require recusal. *Commonwealth v. Druce*, 796 A.2d 321, 330 (Pa.Super.2002). The Court reasoned its inquiry was "limited to *the effect* of the purported Code violation, not *the existence* of a purported violation itself." *Id.* (emphasis in original). In its final analysis, the Superior Court concluded, "the record does not establish bias, ill will or prejudice, nor does it raise an appearance of partiality on the part of the court." *Id.*, at 332. This Court granted review, limited to a single issue:

> Does a judge's violation of Judicial Canon 3A(6) establish enough evidence to compel recusal or is more required, *i.e.,* evidence concerning an appearance of bias and prejudice?

■ Appellant asks this Court to establish a *per se* rule requiring recusal for any such violation, arguing it creates at the very least an appearance of impropriety which robs a litigant of a fair and impartial sentencing.

"The sentencing decision is of paramount importance in our criminal justice system," and must be adjudicated by a fair and unbiased judge. *Commonwealth v. Knighton*, 490 Pa. 16, 415 A.2d 9, 21 (1980). This means, a jurist who "assess[es] the case in an impartial manner, free of personal bias or interest in the outcome." *Commonwealth v. Abu–Jamal*, 553 Pa. 485, 720 A.2d 79, 89 (1998). Because of the tremendous discretion a judge has when sentencing, "a defendant is entitled to sentencing by a judge whose impartiality cannot reasonably be questioned." *Commonwealth v. Darush*, 501 Pa. 15, 459 A.2d 727, 732 (1983). "A tribunal is either fair or unfair. There is no need to find actual prejudice, but rather, the appearance of prejudice is sufficient to warrant the grant of new proceedings." *In Interest of McFall*, 533 Pa. 24, 617 A.2d 707, 714 (1992).

■ If a party questions the impartiality of a judge, the proper recourse is a motion for recusal, requesting that the

A judge should abstain from public comment about a pending proceeding in any court....This subsection does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court. Code of Judicial Conduct Canon 3A(6).

judge make an independent, self-analysis of the ability to be impartial. *Commonwealth v. Travaglia,* 541 Pa. 108, 661 A.2d 352, 370 (1995). If content with that inner examination, the judge must then decide "whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary." *Commonwealth v. Tharp,* 574 Pa. 202, 830 A.2d 519, 534 (2003) (quoting *Abu–Jamal,* at 89). This assessment is a "personal and unreviewable decision that only the jurist can make." *Id.* "Once the decision is made, it is final. . . ." *Travaglia,* at 370 (quoting *Reilly v. SEPTA,* 507 Pa. 204, 489 A.2d 1291, 1300 (1985)).

■■■ This Court presumes judges of this Commonwealth are "honorable, fair and competent," and, when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice. *Commonwealth v. White,* 557 Pa. 408, 734 A.2d 374, 384 (1999). The party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal, and the "decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion." *Darush,* at 731.

Appellant submits the abuse of discretion standard does not adequately protect a defendant's fair trial rights, and only a *per se* rule requiring recusal of a judge who violates Canon 3A(6) can ensure a fair and impartial disposition, and protect the court's appearance of propriety. He argues a judge who knowingly violates the Code of Judicial Conduct eviscerates the public's faith and trust in the system, which cannot be cured by subsequent self-inspection. Judge Kleinfelter's comments, he contends, illustrate the need for a *per se* rule, and the necessity of removing the decision-making process from the offending jurist.

■■■ The underlying purpose of the Code of Judicial Conduct is to "preserv[e] both the integrity and independence of the judiciary." *Matter of Larsen,* 532 Pa. 326, 616 A.2d 529, 579 (1992). Although "the whole of the Code of Judicial

Conduct, does not have the force of substantive law," *Reilly,* at 1298, the Code is intended to "impose[ ] standards of conduct upon the judiciary to be referred to by a *judge* in his *self-assessment* of whether he should volunteer to recuse from a matter pending before him." *Id.* (emphasis in original). The Code's "provisions merely set a norm of conduct for all our judges and do not impose substantive legal duties on them." *Id.* A *per se* rule would impose a legal duty of recusal based upon a Judicial Code violation and remove any introspective discretion from the jurist. Such a structured rule would defeat the spirit of our judicial processes and undermine the legitimacy of our judges. As stated previously, this Commonwealth must continue to reserve faith in, and give due deference to our jurists, and allow them to address these initial challenges. Their discretion may of course be reviewed, but it must first be allowed to be exercised.

Canon 3A(6) does not require recusal or sanction of a judge who publicly comments on a pending proceeding, but merely directs: "A judge *should* abstain from public comment about a pending proceeding...." Code of Judicial Conduct Canon 3A(6) (emphasis added). This Court "do[es] not approve of members of the judiciary speaking to the press about cases pending before them; yet, a jurist who has made such ill-advised comments does not necessarily abuse his or her discretion when he denies a motion for his or her disqualification." *Travaglia,* at 369–70 (footnote omitted).

■ The federal courts, which have an almost identical provision, Canon 3A(6) of the Code of Conduct for United States Judges, have similarly rejected attempts to make a *per se* rule. Instead, when a judge's partiality is called into question based on comments concerning a pending matter, the federal courts apply what is known as the "extra-judicial source" doctrine.[3] *See United States v. Grinnell Corp.,* 384

3. Under the extra-judicial source doctrine, alleged bias stemming from facts gleaned from the judicial proceeding will rarely be grounds for recusal. *See United States v. Antar,* 53 F.3d 568, 574 (3d Cir.1995). As the United States Supreme Court has stated:

U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); *Johnson v. Trueblood*, 629 F.2d 287, 290–91 (3d Cir.1980), *cert. denied*, 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981). This Court has also tentatively accepted the extra-judicial source doctrine, noting it is significant if the information at the root of the recusal motion was obtained in a prior proceeding of the case, and not from any pretrial bias or personal disdain. *See Commonwealth v. Boyle*, 498 Pa. 486, 447 A.2d 250, 252 n. 6 (1982).

■ There is no claim that Judge Kleinfelter ever met appellant before proceedings began, or had preconceived animosity toward him. Although Judge Kleinfelter's comments invited additional scrutiny of his subsequent rulings, they did not cast a shadow of impropriety on any proceedings or necessitate recusal. The comments were directly related to information appellant admitted in court at his guilty plea: leaving the scene of an accident involving the death of Mr. Cains. N.T., 9/11/00, at 11–12. Publically, however, appellant maintained he thought he hit a sign and contested the constitutionality of 75 Pa.C.S. 3742(a). Judge Kleinfelter merely commented that he found strange the post-plea public comments appellant chose to make, and noted their inconsistency with his in-court plea. His remaining comments firmly expressed his impartiality.

Appellant relies heavily on *Darush*, where this Court reversed and remanded for resentencing by a different judge because of comments made by the judge. The sentencing judge, while the county's District Attorney years earlier, was

[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (emphasis in original).

alleged to have stated: "[w]e want to get people like him [Darush] out of Potter County," to a third party. *Id.,* at 732. This Court was troubled not so much with this dated, unsubstantiated comment, but rather with the judge's reluctance to admit or deny making the statement, and his refusal to offer any explanation about its context or validity. This Court concluded the judge's reluctance to deal with this perceived partiality cast enough of a specter of impropriety among "a significant minority of the lay community" as to require recusal. *Id.*

*Travaglia,* decided 12 years later, is more akin to appellant's circumstances. In *Travaglia,* the defendant was awaiting post conviction review, when the trial judge made several comments to newspapers, such as: "I am shocked that it takes 11 years in our judicial system to find an excuse to avoid the death penalty. If anyone deserves to die, these two individuals ... do for killing four people for fun." *Id.,* 661 A.2d at 369 n. 37. This Court did not approve of the judge's comments, but concluded the judge's explanation and handling of the matter did not require recusal. *Id.,* at 369–70.

Likewise, Judge Kleinfelter adequately addressed the concerns surrounding his comments to the reporter. Even in the newspaper article itself, he stated he would not be pressured into giving appellant a tougher sentence, a statement that acknowledged he would not let appellant's public statements affect him any more than he would allow opposing pressures to do so. Before handing down appellant's sentence, Judge Kleinfelter made clear he was aware of the issue of his impartiality:

> Before we begin with the essence of this proceeding, I do feel compelled to make some collateral remarks on some issues which have recently come before in connection with this case. I refer to the recusal motion which was filed first in this court, denied, and then refiled in the Pennsylvania Supreme Court. These motions challenge my impartiality to proceed with sentencing in this case. The motions are based solely on a newspaper article which appeared as a result of an interview I granted with The Associated Press.

I was asked during that interview to reconcile the Defendant's plea of guilty with the public statements that he made afterwards to the effect that he only thought he hit a sign. I expressed puzzlement at the apparent contradiction: the fact that I believe I stated that the whole idea of a hit and run charge under the statutory section involving an accident resulting in injury or death of a person, was that the object that was struck was in fact a person rather than some inanimate object such as a traffic sign.

I certainly had heard nothing about traffic signs at the guilty plea proceeding. Whatever my perplexing over this inconsistency, which the Defendant's lawyers have attempted to explain away, such should hardly be equated with impartiality (sic).

N.T., 10/27/00, at 30–31. Judge Kleinfelter openly acknowledged making the comments, then reiterated his ability to be fair and impartial, as he had during the media interview itself. He clearly gave the matter considerable thought, and acknowledged the public interest on both sides of the sentencing issue. We find his introspection and sincere public statements of impartiality sufficient to justify his decision not to recuse himself.

Appellant argues that even if this Court is unwilling to pronounce a *per se* rule requiring recusal for a Code of Judicial Conduct violation, the facts of his case prove Judge Kleinfelter imposed an "unduly harsh sentence on Mr. Druce," because he was an elected official. Brief of Appellant, at 27. This assertion is clearly refuted by the distinction Judge Kleinfelter made in the very article complained of, and by the record. Appellant received a sentence of two to four years in prison, when he faced as much as 16 years. Particularly, appellant received the mandatory minimum for his only felony conviction, leaving the scene of the accident which caused Cains' death, and merely six months for each attempt at covering up his guilt. Appellant, a public figure in a city where this crime was notorious, did not report his involvement, lied about it, and tried to cover it up. Judge Kleinfelter, on appellant's tampering with evidence and insurance

charges, gave him a sentence equal to each month appellant hid his guilt and obstructed justice. In a case of great public interest, compounding the pressure to find a just sentence and under manifest scrutiny from all sides, Judge Kleinfelter found a result that was certainly not harsh or excessive.

This Court believes in the integrity of its jurists. The comments were violative of the Canon, but not a blatant disregard for its purpose. The substance of the comments did not evince bias or prejudice, for or against appellant; it certainly did not impugn Judge Kleinfelter's integrity. This case illustrates the danger of presentencing judicial comments to the press. Although this Court does not condone the comments, the record shows Judge Kleinfelter made the necessary self-assessment, and we find no actionable error in his denial of the recusal motion.

Judgment of sentence affirmed.

Former Justice LAMB did not participate in the decision of this case.

Justice CASTILLE files a concurring opinion.

Justice NEWMAN files a dissenting opinion.

## CONCURRING OPINION

Justice CASTILLE.

I join the Majority Opinion, writing separately only to explain why I tender my joinder despite the Dissenting Statement I issued when appellant requested and was denied emergency review by this Court before he was sentenced. Madame Justice Newman has set forth the entirety of my Dissenting Statement, which she joined.

I continue to believe that it would have been a wiser course for President Judge Kleinfelter not to have given the interview and made the remarks in question and, once he did, to have recused. As the matter proceeded upon guilty plea, rather than jury or bench trial, reassignment of the matter would have proved minimally disruptive. I viewed interven-

tion by this Court to be important, and appropriate under King's Bench review, primarily as a supervisory matter. Action at that time would have avoided injecting the current issue into the case. A clear Majority of the Court, however, obviously felt otherwise.

Justice Newman is certainly correct that this Court's decision not to exercise extraordinary review before sentencing has no binding *stare decisis* effect on the recusal issue before us today. Indeed, the order denying review was careful in noting that it was "without prejudice." By the same token, however, the matter is now before the Court in a significantly different posture than before. When appellant requested extraordinary review, this Court had no explanation from President Judge Kleinfelter as to why he had denied recusal; he had simply denied the motion without explanation. Now, however, we are presented with a record in which President Judge Kleinfelter has explored and expressed at some length the reasons why he was satisfied that he had not prejudged the matter and could remain fair and impartial at sentencing. Moreover, appellant is now in sentenced status and his judgment of sentence has been reviewed and affirmed on direct appeal by the Superior Court, the court with primary direct review responsibility. The Superior Court filed a lengthy published opinion disposing of the recusal claim, as well as other claims raised by appellant, on the merits.

In granting limited discretionary review of the Superior Court's determination, this Court posed the single issue as follows: "Does a judge's violation of Judicial Canon 3A(6) establish enough evidence to compel recusal or is more evidence required, *i.e.,* evidence concerning an appearance of bias and prejudice?" The question is not whether, as a supervisory matter, this Court should require that a different judge preside over sentencing. Indeed, the salutary purpose which would have been served by ordering recusal at the pre-sentencing stage—*i.e.,* preventing the recusal issue from becoming an issue on appeal—cannot now be achieved. Instead, the question now before the Court is a question of law concerning whether President Judge Kleinfelter was required

to recuse, such that his failure to do so obliges us to vacate and remand for resentencing before another jurist. Resolution of the question affects more than just this case; it will provide guidance in future cases involving recusal standards.

On this narrow but substantive question before the Court, the Majority Opinion does not mince words: it plainly acknowledges that the comments here violated Canon 3A(6) of the Code of Judicial Conduct, and does not condone them. The Majority is also careful to emphasize that "[t]his case illustrates the danger of presentencing judicial comments to the press." Majority op. at 593–94, 848 A.2d 111. The Majority ultimately holds, however, that it rejects the notion that recusal is *per se* required for all violations of the Canon and then determines, on the totality of the record, that recusal was not required here.

In my view, Mr. Justice Eakin's analysis of the legal question of whether recusal is required in a circumstance such as this, so that the sentence must be vacated, is thoughtful, persuasive, and correct. Given the posture in which the case presents itself, I join without hesitancy, notwithstanding what I would have preferred to do as a supervisory matter when the case was before this Court in a pre-sentencing posture.

## DISSENTING OPINION

Justice NEWMAN.

I must respectfully dissent from the decision reached by the majority today. I agree that a violation of Canon 3A(6) of the Code of Judicial Conduct does not automatically require recusal of the jurist. As I have previously articulated, though, in the present circumstance, I believe that the actions of President Judge Kleinfelter raised at least an appearance of impropriety and bias and, therefore, his refusal to recuse himself was error.

In October of 2000, right before sentencing, Thomas Druce, III (Druce) filed an Emergency Application to this Court requesting that we exercise our King's Bench powers to force President Judge Kleinfelter's removal from the sentencing

proceedings. The Court denied the request, but Mr. Justice Castille filed a Dissenting Statement, which I joined. The Dissenting Statement declared in its entirety as follows:

> I dissent. The published remarks attributed to President Judge Kleinfelter concerning this matter were not mere public statements made during the course of his official duties or attempts to explain the procedures of the court. Rather, they were comments concerning substantive matters in the case pending before him. *See* Pennsylvania Code of Judicial Conduct, Canon 3A(6) (judge should abstain from public comment about a pending proceeding). Accordingly, I would grant the Emergency Application for Recusal and/or Disqualification and remove President Judge Kleinfelter from this case. However, I would deny the motion for assignment of an out-of-county judge and allow the matter to be reassigned to another judge of the Court of Common Pleas of Dauphin County.

Reproduced Record at 216a.

The decision whether or not to grant King's Bench review is not a decision on the merits and, accordingly, principles of *stare decisis* do not apply. Thus, I standby my earlier-expressed sentiments, ably articulated by Mr. Justice Castille in his Dissenting Statement. I would reverse the Order of the Superior Court and remand the matter to the Court of Common Pleas of Dauphin County for a new sentencing hearing, to be conducted by a different judge.