J-A35003-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CORNELL POINTER, | |
| Appellant | No. 1918 WDA 2014 |

Appeal from the Judgment of Sentence Entered October 28, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0004299-2011

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED DECEMBER 29, 2015**

Appellant, Cornell Pointer, appeals from the judgment of sentence of life imprisonment, without the possibility of parole, imposed after a jury convicted him of second-degree murder, attempted murder, robbery, and criminal conspiracy.  After careful review, we affirm.

The trial court set forth the facts of this case, as follows:

On February 16, 2011[,] Waishard White wanted to purchase 1-2 pounds of marijuana, and to accomplish that he contacted Elisha Jackson that afternoon to put him in contact with a possible local source/seller of marijuana.  Jackson was a woman with whom White had been intimately involved … in the past, and who had also provided him with sources of marijuana prior to that day.

During the late morning and early afternoon, Jackson was with her then current boyfriend, [Appellant], and his close friend and associate, D'Andre Black, in the Everton area of the City of Pittsburgh.  Everton was a small (two building) housing project that was relatively isolated and heavily wooded on all sides.  During the early afternoon [Appellant] and Black drove her to a

bus stop so that she could get a bus to downtown Pittsburgh. That afternoon while downtown, Jackson received White's call and she in turn contacted Black, who was still with Appellant, regarding White's desire to purchase marijuana. Jackson made Black aware of White's desire to buy 1-2 pounds of marijuana and asked Black if she could give White his phone number. Although Black did not have any marijuana to sell, he told Jackson that she could give White his number and he would handle it - that "they were going to get out on them[."]

White and a friend, Jemar Stenhouse, contacted Black, and following a series of phone conversations that late afternoon White and Stenhouse agreed to purchase two pounds of marijuana from Black in Everton for $2,500. Following the final conversation Black turned to [Appellant] and stated that, "I have a lick [robbery] set up for us[."] [Appellant] replied, "Let's do it[."]

Since neither [Appellant] [n]or Black had any marijuana, they decided to purchase an ounce of marijuana and arrange it in a bag to make it appear to be the two pounds sought by White and Stenhouse. [Appellant] and Black believed that such a measure was necessary to lure White and Stenhouse out of their car when they arrived in Everton. They undertook this artifice in the apartment of Jocelyn Simmons, who was a mutual friend of both [Appellant] and Black. Part of their plan included [Appellant's] arming himself with a firearm, and he left the apartment during this time and returned with an AK-47. Black's role was to get White and Stenhouse out of their car and close to the entrance of the building once they arrived in the Everton complex; [Appellant] was then to come out of the building with the AK-47, order them to the ground and take their money.

White and Stenhouse arrived in Everton in Stenhouse's vehicle in the early evening and phoned Black, who came outside Simmons' residence and spotted the vehicle. Black waved to White and Stenhouse and in response they parked the vehicle, got out, and approached Black. Black recognized both Stenhouse and White as persons he knew from the Wilkinsburg area, a nearby community. Although he now had some reservations about the robbery, Black nonetheless led them toward the entrance to Simmons' building.

As the three men approached the front door of the building [Appellant] burst out of the building brandishing the AK-47 and

ordered White and Stenhouse to the ground. White immediately turned and ran toward the parked vehicle but was pursued and shot one time by Appellant, causing him to fall to the ground. Stenhouse then fled in a different direction, only to be pursued and shot by Appellant. Stenhouse received a grazing wound to his left chest but managed to escape by diving over a hill and fleeing into the heavily wooded area behind the building. Stenhouse found his way to a nearby street where a woman on her porch allowed him to use her phone. Stenhouse contacted White's brother, Meijour, and told him that Waishard had been shot in Everton. Meijour, along with Waishard's father, drove to Stenhouse's location, picked him up and drove to the Everton complex. However, upon their arrival less than an hour after the shooting, neither Waishard nor the vehicle were there.

The vehicle was gone because Black drove the vehicle away immediately after the incident, leaving it in a shopping center in a neighboring community where it was recovered by Pittsburgh police several hours later. Pittsburgh police were contacted and began an investigation that included an unsuccessful search of the area for White. Two days later, February 18, 2011, two persons walking on a street below Everton observed what they believed to be a body in the woods. Police then discovered White's body near a path that led through the heavily wooded area behind Everton to the street below.

The autopsy indicated that White died of a single gunshot wound to the arm and trunk. The bullet transected many blood vessels including one major blood vessel, the subscapular artery, and caused contusions of upper and middle lobes of White's lung. The resultant internal bleeding caused cardiovascular collapse and a survivability period of only 10-15 minutes.

Trial Court Opinion (TCO I), 1/16/13, at 3-7 (citations to record omitted).

On November 18, 2011, the jury convicted Appellant of second-degree murder, robbery, and criminal conspiracy. On February 16, 2012, the trial court sentenced Appellant to a period of life imprisonment, without the possibility of parole, for his conviction of second-degree murder, and five to

ten years' incarceration on each of the other two convictions, to be served consecutively.

Shortly thereafter, Appellant filed a post-sentence motion. On April 2, 2012, he filed a supplemental post-sentence motion, which incorporated the earlier motion and sought, among other things, an evidentiary hearing based upon after-discovered evidence consisting of a letter from his co-conspirator, Black, to Appellant's counsel. The letter included a recantation of the testimony that Black gave at Appellant's trial. The trial court did not hold a hearing on Appellant's motion, instead allowing it to be denied by operation of law on June 26, 2012.

Appellant filed a timely appeal, and in an unpublished memorandum decision issued on December 9, 2013, this Court vacated his judgment of sentence and remanded for the court to conduct a hearing on Appellant's motion for a new trial based on after-discovered evidence. *See* ***Commonwealth v. Pointer***, No. 1154 WDA 2012, unpublished memorandum (Pa. Super. filed Dec. 9, 2013).[1] Prior to the trial court's holding the evidentiary hearing, Appellant filed a motion requesting the trial judge to recuse, which the judge denied that same day. On October 16th

---

[1] We also noted that Appellant's sentence was illegal, as "the court imposed a separate sentence for the crime of robbery, which merged with the crime of second-degree murder for sentencing purposes." *Id.* at 14 n.2. We suggested that the trial court consider this error if it ultimately resentenced Appellant on remand.

and 28th of 2014, the court conducted the hearing on Appellant's after-discovered evidence claim. At the close thereof, the court denied Appellant's motion for a new trial and resentenced him to a term of life imprisonment, without the possibility of parole, for his murder conviction, as well as a concurrent term of five to ten years' incarceration for his offense of conspiracy.

Appellant filed a timely notice of appeal, and presents the following two issues for our review:

> I. Whether the trial court abused its discretion in not recusing itself from the evidentiary hearing ordered by this Honorable Court on remand when, based on the totality of the circumstances, there was an obvious appearance of prejudgment and prejudice on the part of the trial court regarding the merits of [Appellant's] request for a new trial based on after-discovered evidence?
>
> II. Whether the trial court erred in not granting [Appellant] a new trial based on after-discovered evidence when Black was the only witness who directly implicated [Appellant] in the crimes, but the sum and substance of his testimony—both at [Appellant's] trial and at the evidentiary hearing—was so unbelievable and incredible in its nature and character that a different verdict would likely result following a new trial?

Appellant's Brief at 6 (emphasis omitted).

Appellant first avers that the trial court erred by denying his motion to recuse.

> Our standard of review of a trial court's determination not to recuse from hearing a case is exceptionally deferential. We recognize that our trial judges are honorable, fair and competent, and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially.

> The party who asserts that a trial judge should recuse bears the burden of setting forth specific evidence of bias, prejudice, or unfairness. Furthermore, a decision by the trial court against whom the plea of prejudice is made will not be disturbed absent an abuse of discretion.

*Commonwealth v. Harris*, 979 A.2d 387, 391-92 (Pa. Super. 2009) (citations and internal quotation marks omitted). Our Supreme Court has also directed:

> If a party questions the impartiality of a judge, the proper recourse is a motion for recusal, requesting that the judge make an independent, self-analysis of the ability to be impartial. If content with that inner examination, the judge must then decide whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This assessment is a personal and unreviewable decision that only the jurist can make. Once the decision is made, it is final....

*Commonwealth v. Druce*, 848 A.2d 104, 108 (Pa. 2004) (citations and internal quotation marks omitted).

Here, Appellant contends that "there was an obvious appearance of prejudgment and prejudice on the part of the trial court regarding [Appellant's] claim of after-discovered evidence." Appellant's Brief at 31. As demonstrative of this 'obvious' appearance of prejudice, Appellant points to language set forth by the trial court in the Pa.R.A.P. 1925(a) opinion it filed in response to Appellant's first appeal before this Court. Therein, the court offered the following explanation for denying, without a hearing, Appellant's motion for a new trial based on the after-discovered evidence of Black's recantation:

[A]t the time of the purported recantation[,] Black had on three occasions, twice under oath and once in a recorded statement, given a detailed account of Appellant's and his own actions. Consequently[,] Black's post sentencing recantation was not a valid basis for granting Appellant a new trial or evidentiary hearing on the matter.

The Pennsylvania Supreme Court has stated that,

It is well settled that recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. There is no less reliable form of proof especially when it involves an admission of perjury.

*Commonwealth v. Gaddy*, 424 A.2d 1268, 1269 (Pa. 1981) (citations and quotations omitted).

Black's attempt to exonerate his close friend after he had received the benefit of his bargain merited no further attention of this Court. *See Commonwealth v. Parker*, 431 A.2d 216, 218 (Pa. 1981) (unless there has been a clear abuse of discretion a trial court's denial of [a] motion for a new trial based on after-discovered evidence will not be disturbed).

TCO I at 18-19.

Appellant maintains that the court's opinion demonstrates that, "even without the benefit of an evidentiary hearing to assess whether Black's post-sentencing claim (that [Appellant] was innocent and not involved in the crimes) was truthful, honest and sincere, the trial court simply predetermined that Black was an inherently unreliable, incredible, and unbelievable witness." Appellant's Brief at 31 (citation omitted). Appellant asserts that the court's opinion created an appearance of prejudice and 'prejudgment' that warranted the court's recusal. Because the court denied Appellant's motion to recuse, Appellant maintains that he "must be afforded a new evidentiary hearing before a different judge." *Id.* at 32.

Initially, we acknowledge that the trial court improperly denied Appellant's after-discovered evidence motion without first conducting a hearing to assess Black's credibility. *See Pointer*, No. 1154 WDA 2012, unpublished memorandum at 11. However, in Appellant's initial appeal, we corrected that error by directing the trial court to conduct such a hearing. Appellant cites no case law supporting the notion that the court's error, in and of itself, required the court to recuse on remand. Moreover, as the trial court states in its most recent opinion, "[n]othing of record indicated that the [t]rial [c]ourt would not be able to independently assess the credibility of the after-discovered evidence at an evidentiary hearing." Trial Court Opinion (TCO II), 4/13/15, at 9. Our review of the record confirms the court's claim.

Additionally, the record also does not support Appellant's assertion that the court had an appearance of impropriety. However, even if we were to accept that claim, we would decline to give Appellant the requested relief of a new hearing, given Black's testimony at the evidentiary hearing conducted on October 16, 2014. There, Black stated:

> [The Commonwealth:] You wrote this letter to [Appellant's] lawyer basically saying that what you testified to at trial was not true? Is that basically what this letter says?
>
> [Black:] Correct.
>
> [The Commonwealth:] Whose idea was it to have this letter written?
>
> [Black:] It was mine.
>
> [The Commonwealth:] Okay. Why did you have that idea?

[Black:] Because like I knew [Appellant] and I just felt bad, so to help him out to like not give him life [in prison] and to do what I can to give it back.

[The Commonwealth:] Are the things you wrote in this letter true?

[Black:] No.

[The Commonwealth:] When you testified at [Appellant's] trial in front of the jury, did you tell the truth?

[Black:] Yes.

[The Commonwealth:] And, Mr. Black, the person that acted with you in this botched robbery, the person that killed Waishard White, is that [Appellant]?

[Black:] Correct.

N.T. Hearing, 10/16/14, at 8-9.  In light of Black's testimony, we fail to see what purpose would be served by granting Appellant a new evidentiary hearing before a different judge.  Thus, Appellant's first issue is meritless and warrants no relief.

In Appellant's second issue, he avers that the court abused its discretion by denying his motion for a new trial based on the after-discovered evidence of the letter containing Black's recantation.

When we examine the decision of a trial court to grant a new trial on the basis of after-discovered evidence, we ask only if the court committed an abuse of discretion or an error of law which controlled the outcome of the case.  Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.  If a trial court erred in its application of the law, an appellate court will correct the error.

***Commonwealth v. Padillas***, 997 A.2d 356, 361 (Pa. Super. 2010)

(internal citations and quotation marks omitted).

In rejecting Appellant's after-discovered evidence claim, the trial court

began by discussing the following legal authority that guided its decision:

> In order to prevail on a motion for [a] new trial based on after-discovered evidence, the defendant must establish that the evidence:
>
>> (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.
>
> ***Padillas***, 997 A.2d at 363. In evaluating the fourth prong of this test, the court must consider the integrity of the proffered after-discovered evidence, the motive of the individual offering the evidence, and the overall strength of the evidence supporting the original conviction. [***Id.***] at 365. With respect to recantation testimony offered as after-discovered evidence, the Pennsylvania Supreme Court has held:
>
>> Recantation testimony is extremely unreliable. When the recantation involves an admission of perjury, it is the least reliable form of proof. The trial court has the responsibility of judging the credibility of the recantation. Unless the trial court is satisfied that the recantation is true, it should deny a new trial. An appellate court may not disturb the trial court's determination absent a clear abuse of discretion.
>
> ***Commonwealth v. Henry***, 706 A.2d 313, 321 (Pa. 1997) (citations omitted).

TCO II at 10.

Under this legal framework, the trial court then stated:

> Following Appellant's conviction, co-defendant D'Andre Black was housed at SCI Camp Hill at the same time as

- 10 -

Appellant. Black subsequently wrote a letter to Appellant's counsel stating that Black's testimony at Appellant's trial, which implicated Appellant as the individual who shot and killed Waishard White, was false. Appellant filed a motion for [a] new trial based on this after-discovered evidence. At the evidentiary hearing, Black stated that the contents of the letter were false, that his testimony at trial was accurate, and that he only wrote the letter because he felt bad that Appellant had received a sentence of life imprisonment. The [t]rial [c]ourt found [Black's] recantation to be false, and thus properly denied Appellant's motion for a new trial. *See Commonwealth v. Anderson*, 353 A.2d 384, 386 (Pa. 1976) (no abuse of discretion where trial court denied motion for [a] new trial based on after-discovered evidence where witness recanted the after-discovered recantation testimony at an evidentiary hearing and stated that his testimony at trial implicating the defendant was the truth).

*Id.* at 11.

Appellant does not explicitly challenge the trial court's disbelief of Black's recantation, presumably because Black's testimony at the evidentiary hearing would make such an argument weak, at best.[2] Instead, Appellant first emphasizes that Black has changed his story several times throughout the course of this case. Appellant then contends that if a new jury were presented with Black's prior variations of the robbery and shooting, *along with* his most recent recantation in the letter to Appellant's counsel, and his

_____

[2] In any event, we note that we ascertain no abuse of discretion in the trial court's decision to disbelieve Black's recantation, which he explained and retracted at the evidentiary hearing. *See Anderson*, 353 A.2d at 386 ("The court below, having conducted an evidentiary hearing concerning the recantations with an opportunity to observe and judge the demeanor and credibility of the witness…cannot be said to have abused its discretion in denying appellant a new trial.").

recantation of that recantation in his testimony at the evidentiary hearing, the jury would find Black "so unbelievable and incredible" that it would acquit Appellant. *Id.* at 35.

Appellant's argument does not entitle him to the relief of a new trial under the after-discovered evidence test set forth, *supra*. **See Padillas**, 997 A.2d at 363. Appellant is requesting that this Court grant him a new trial so he may use Black's recantation, and his subsequent withdrawal of that recantation, solely to impeach Black's credibility. In this regard, Appellant fails to satisfy the third prong of the after-discovered evidence test. Therefore, he is not entitled to a new trial based on this argument.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/29/2015</u>