J-S37038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| GREGORY BROWN, JR. | |
| Appellee | No. 1817 WDA 2015 |

Appeal from the Order Entered November 18, 2015
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0006028-1996,
CP-02-CR-0008170-1996

BEFORE:  GANTMAN, P.J., SHOGAN, J., and LAZARUS, J.

MEMORANDUM BY LAZARUS, J.:                **FILED AUGUST 09, 2016**

The Commonwealth of Pennsylvania appeals the denial of a motion seeking the recusal of the Honorable Joseph K. Williams, III, from the retrial of Gregory Brown, Jr.  Upon careful review, we affirm.

On February 11, 1998, Brown was convicted of three counts of second-degree murder and one count each of arson-endangering persons, arson-endangering property, and insurance fraud.  The charges stemmed from a 1995 house fire at 8355 Bricelyn Street, Pittsburgh, where Brown resided with his mother and family.  The fire resulted in the deaths of three firefighters.  Brown received three consecutive life sentences for the murder convictions, and concurrent sentences of 5 to 10 years and 2 ½ to 5 years for the arson counts.  On direct appeal, this Court affirmed Brown's convictions, but vacated his sentence for arson-endangerment of persons. After this Court declined to grant reargument, our Supreme Court denied

allowance of appeal.  Thereafter Brown unsuccessfully sought habeas corpus relief in federal court.

On May 5, 2010, Brown filed a *pro se* petition under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, which was subsequently amended in a series of filings by appointed counsel. Ultimately, the PCRA court granted relief to Brown in the form of a new trial by order dated February 19, 2014.  The PCRA court found that the Commonwealth had withheld impeachment evidence from the defense at the time of Brown's first trial.  On appeal, a panel of this Court affirmed the ruling of the PCRA court, and our Supreme Court denied the Commonwealth's petition for allowance of appeal.

Upon remand to the trial court, the Commonwealth filed a motion to recuse, which Judge Williams denied by order dated November 18, 2015. The Commonwealth filed this timely appeal, contending that Judge Williams erred in denying recusal, arguing that the evidence and trial record demonstrate personal bias, and/or the appearance of bias, which should have led Judge Williams to conclude he could not preside impartially at the retrial.[1]  In the alternative, the Commonwealth argues that Judge Williams

_____

[1] We note that on January 21, 2016, Brown filed a counseled motion to quash the instant appeal, in which he asserted that the appeal is frivolous on procedural and substantive grounds and was initiated by the Commonwealth for delay purposes.  The motion to quash was denied in an order entered March 14, 2016, and the parties agreed that the appeal would be scheduled for the next available submission panel of this Court.  Additionally, the March 14, 2016 order was entered without prejudice to Brown's right to raise the issues included in the motion to quash again before the merits panel.  We note that Brown's motion to quash in essence requested a ruling on the substantive merits of this appeal; we have addressed this matter on the
*(Footnote Continued Next Page)*

- 2 -

abused his discretion by failing to *sua sponte* transfer the recusal motion to another judge for disposition, as he was unable to maintain his objectivity.

A trial judge must recuse him or herself if there is any doubt as to his ability to "preside impartially in a criminal case or . . . impartiality can reasonably be questioned." ***Commonwealth v. Goodman**,* 311 A.2d 652, 654 (Pa. 1985). The standards for recusal are well-established. Generally, a motion for recusal is directed to and heard by the jurist whose impartiality is questioned. ***Commonwealth v. Abu-Jamal***, 720 A.2d 79, 89 (Pa. 1998). The judge must make a conscientious determination of his ability to assess the case in an impartial manner, free of interest in the outcome or personal bias in considering a recusal request. ***Id.*** The jurist then must consider whether his continued involvement undermines public confidence in the judiciary and/or would create an appearance of impropriety. ***Id**.* This is a personal and unreviewable decision that only the jurist can make. ***Id.***

In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent. ***Id.*** As the trial court is in the best position to gauge its ability to preside impartially, we defer to its decision in denying the motion to recuse. ***Commonwealth v. Harris***, 979 A.2d 387, 391-92 (Pa. Super. 1990). If the trial judge determines that he or she can hear and dispose of the case fairly and without prejudice, that decision will be final unless there is an abuse of discretion. ***Reilly v.***

(Footnote Continued) ─────────────

merits herein and have determined that the trial court did not err in denying the Commonwealth's motion to recuse, as discussed below.

*Southeastern Pennsylvania Transp. Auth.*, 489 A.2d 1291, 1300 (Pa. 1985).

> The term "discretion" imports the exercise of judgement, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgement, but where the judgement is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000), quoting *Coker v. S.M. Flickinger Company, Inc.*, 625 A.2d 1181, 1186 (Pa. 1993).

The burden lies on the party seeking recusal to produce evidence establishing bias, prejudice, or unfairness which raises substantial doubt as to the ability of the jurist to preside impartially. *Abu-Jamal*, 720 A.2d at 89, citing *Rizzo v. Haines*, 555 A.2d 58, 72 (Pa. 1989).

Here, the Commonwealth's claim is based largely upon an allegation that Judge Williams harbors bias toward the various agencies that investigated the fire in question, particularly ATF Special Agent Matthew Regentin, who investigated the Bricelyn Street fire and is a "necessary witness" at Brown's retrial. Brief of Appellant, at 21. The Commonwealth asserts that Judge Williams' alleged bias stems from an incident that occurred prior to his ascension to the bench, in which a store with which the judge had done business burned in an arson. During the investigation, law enforcement officials discovered that Judge Williams had previously been engaged in a dispute with the store's owner and possessed a key to the store. Despite this prior dispute, the store's owner retained Judge Williams

to represent him during questioning by Special Agent Regentin and other law enforcement officers. During the course of the interview, investigators asked Judge Williams if he had any involvement with the fire, which Judge Williams denied.

Following the interview, Judge Williams wrote a letter to Pittsburgh Fire Department Captain Francis Deleonibus expressing his displeasure with the manner in which the interview had been conducted. In particular, Judge Williams conveyed his dismay at having, himself, been interrogated in front of his client. The Commonwealth asserts that Judge Williams "took the incident personally and harbored a deep resentment toward [the] investigators." Corrected Motion to Recuse, 10/27/15, at 8.

Subsequently, during 2012 PCRA proceedings in this matter, Judge Williams noticed ATF agents sitting in the courtroom. Among the agents was Special Agent Regentin, who was taking notes. At a sidebar with counsel, the court expressed concern that, if they left the courtroom, the agents might violate the sequestration order the court had put in place by sharing their notes or other information from the proceedings with potential witnesses located outside the room. Accordingly, the court indicated that he would prefer if the agents did not leave the courtroom. Prior to this incident, Judge Williams had asked another observer – a defense witness – to leave the courtroom because of the sequestration order. The Commonwealth argues that Judge Williams' decision requiring the observing defense witness to leave the courtroom, while expressing concern over allowing the ATF agents to leave, demonstrated a mistrust of the agents, which the

Commonwealth posits is further evidence of the court's bias against the prosecution.

The Commonwealth also argues that the language used by Judge Williams in his written opinions establishes bias against the prosecution. Judge Williams described the behavior of Agent Jason Wick, whom the court concluded withheld exculpatory information from the defense, as "ratcheted up" and "aggressive." The court further found that Agent Wick "purposefully" chose not to share the exculpatory information which formed the basis for Brown being granted a new trial.

The trial court held a hearing on the recusal motion on November 18, 2015. The Commonwealth presented no evidence, choosing instead to "rest on [its] pleadings." N.T. Recusal Hearing, 11/18/15, at 2. The trial court announced its decision on the record and subsequently supplemented its in-court statement with a Pa.R.A.P. 1925(a) opinion.

In concluding that he need not recuse himself from Brown's retrial, Judge Williams noted the general standard by which a recusal motion must be analyzed:

> THE COURT: When I look at this analysis, there are two big parts to it. First, has there been evidence presented that establishes bias, prejudice or unfairness which raises a substantial doubt as to my ability to preside over the retrial of Mr. Gregory Brown?
>
> Second, does my continued involvement in the case create the appearance of impropriety [that] would tend to undermine public confidence in the judiciary?

N.T. Recusal Motion Hearing, 11/18/15, at 37.

The court began by observing that the Commonwealth, while acknowledging that it bore the burden of proof on the issue of recusal, had

- 6 -

nevertheless failed to present any evidence in support of its motion. Citing accusations of bias against Special Agent Regentin, the court noted the Commonwealth's failure to present the agent's testimony to establish "some animus, if there was a feud in a meeting, if there was any manifestations, [of] this ire or resentment that I've had over the course of the last 13 years[.]" *Id.* at 38. The court stated that, when he saw Special Agent Regentin in court during PCRA proceedings, he did not know who he was, and "[i]f that gentleman was in court today, I couldn't pick him out." *Id.* at 39. The court characterized the Commonwealth's allegations as "conjecture, where the government just throws up these ideas, throws them on the wall, presents no evidence[.]" *Id.* at 40.

Judge Williams cited Code of Judicial Conduct Rule 2.2[2] and concluded that he had been impartial and fair, and had applied the law appropriately. Addressing the Commonwealth's arguments regarding the "tone and tenor"

---

[2] The Code of Judicial conduct Rule 2.11 regarding the disqualification of a jurist states:

   (A)   A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

      (1)   The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of the facts that are in dispute in the proceeding.

Pa. Code Judicial Conduct 2.11.

of his opinions, the court noted that "honesty does not equal fixed bias." *Id.* at 41.

As to the perception of impropriety, Judge Williams posited that, rather than casting doubt in the mind of the public as to the impartiality of the judiciary, his recusal at the behest of the Commonwealth would lead the public to believe that "[w]hen one party doesn't like the judge assigned to their matter and can get it changed, . . . justice can be manipulated." *Id.* at 42. The court also cited to Rule 2.7 of the Judicial Code of Conduct, which states that "[u]nwarranted disqualification or recusal may bring public disfavor to the court and to the judge personally." Code of Judicial Conduct, Rule 2.7. Judge Williams concluded that "a reasonable man would believe that I've been reasonable," and that his further participation in these proceedings would not create an appearance of impropriety. N.T. Recusal Motion Hearing, 11/18/15, at 45. Rather, the court concluded, "I believe that a reasonable man looking at this case would probably wonder why the government [would] withhold the fact that two principal witnesses in the case were paid and not disclose that to anyone." *Id.*

At the outset, we concur with the trial court that the Commonwealth plainly failed to sustain its burden of proof to raise a "substantial doubt" regarding Judge Williams' ability to preside fairly over Brown's retrial. *Abu-Jamal*, 720 A.2d at 89. Rather than create an evidentiary record at the recusal hearing, the Commonwealth "rest[ed] on [its] pleadings," which incorporated copies of correspondence relating to the arson fire for which

then-attorney Williams' client was questioned in 2004 and two affidavits relating to Judge Williams' alleged bias against Special Agent Regentin. These documents, without additional testimony or other evidence to contextualize or explain them, fell far short of demonstrating that Judge Williams harbored bias against either the Commonwealth or any of the agencies that assisted in the investigation. Indeed, to conclude that Judge Williams was biased based on such meager evidence would require leaps of imagination, assumptions, and rank speculation that is simply not supported in the record, much less by actual evidence adduced in court. For this reason alone, the court was within its discretion to deny the Commonwealth's request.

Even reaching the merits of the claim, our review of the record reveals no evidence that any of Judge Williams' challenged behavior evidences an inability to preside impartially. While the court certainly expressed frustration with the Commonwealth's failure to disclose reward payments promised – and ultimately paid – to witnesses Wright and Abdullah, such a reaction was justified in light of the fact that the Commonwealth for years continued to deny the existence of reward money, in both state and federal court proceedings. Indeed, this Court previously found that there was "no dispute that the Commonwealth did not turn over" information relating the offer of a reward and that, over the course of PCRA proceedings, Brown was "thwarted by the Commonwealth's repeated denials[.]" ***Commonwealth v.***

**Brown**, 289 WDA 2014, at 26, 30 (Pa. Super. filed 3/20/15) (unpublished memorandum).

Moreover, the Commonwealth's reliance on the language used by Judge Williams in his February 19, 2014 opinion is misplaced. It is the trial court's duty to make credibility determinations and apply them accordingly. Our Supreme Court has stated that "alleged bias stemming from facts gleaned from the judicial proceeding will rarely be grounds for recusal." **Commonwealth v. Druce**, 848 A.2d 104, 110 n.3 (Pa. 2004). The **Druce** Court quoted with approval a statement by the U.S. Supreme Court in **Liteky v. United States**, 510 U.S. 540, 555 (1994), in which the Court observed:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

**Druce**, 848 A.2d at 110 n.3, quoting **Liteky**, *supra* (emphasis in **Liteky**).

Here, Judge Williams' credibility determinations were rendered as a necessary part of his judicial duties. His findings were affirmed by this Court, which found them to be supported by the record, and our Supreme Court declined further review. Based on the record before us, we are

- 10 -

unable to conclude that Judge Williams abused his discretion in declining to recuse himself from further proceedings in this matter.

Lastly, the Commonwealth claims that Judge Williams abused his discretion by failing to *sua sponte* transfer its recusal motion to another judge for adjudication.

For the first time in its Rule 1925(b) statement, the Commonwealth asserted that Judge Williams should have *sua sponte* referred the recusal motion to another judge because his "comments proved he could not maintain an objective posture over the Commonwealth's allegations of bias, prejudice, and unfairness." Brief of Appellant, at 42. The Commonwealth acknowledges that it did not request that another judge decide its motion, but, citing ***Municipal Publications, Inc. v. Court of Common Pleas of Philadelphia County***, 489 A.2d 1286 (Pa. 1985), argues that the trial court was required to refer the matter to another judge *sua sponte*, because Judge Williams allegedly made his own credibility an issue.

In ***Municipal Publications***, the defendant moved for the recusal of the trial judge on the basis that the judge was biased in favor of plaintiff's counsel, citing a purported personal relationship as well as alleged *ex parte* conversations between the two concerning the underlying case, as well as the recusal motion itself. At the hearing on the recusal motion, the trial judge both presided and gave testimony. Thereafter, the defendant filed in this Court a writ of prohibition, seeking to bar the trial court from proceeding on the recusal motion. This Court granted the writ and directed that a new judge be appointed to conclude the matter. The plaintiff, who had opposed the writ of prohibition, filed a petition for allowance of appeal and/or the

assumption of plenary jurisdiction with our Supreme Court, which accepted plenary jurisdiction.

The Supreme Court held that, where a judge concludes that the allegations of a recusal motion justify an evidentiary hearing *in which he will testify*, it becomes incumbent upon him to step aside for the appointment of another judge to hear and rule upon the issue of disqualification. The Court reasoned that, in such a circumstance, the disqualification hearing brings in question the credibility of the judge, such that the judge is not in the position to maintain the objective posture required to preside over and assume the role of the trier of fact in that proceeding.

Here, unlike in **Municipal Publications**, the trial court did not testify during the recusal hearing. Indeed, no testimony whatsoever was presented at the hearing. Rather, in announcing its ruling, the court made passing reference to the fact that he had not recognized Special Agent Regentin. This certainly does not rise to the level of sworn testimony such as occurred in **Municipal Publications.** Accordingly, and in light of our above findings regarding the merits of the Commonwealth's recusal motion, we can discern no merit in the Commonwealth's claim that the trial court was required to *sua sponte* refer the motion to another judge.

Additionally, because the Commonwealth failed to request in the first instance that Judge Williams transfer the recusal motion to another judge, any claim that the motion should have been transferred is waived on appeal. Issues not raised in the lower court are waived and cannot be raised for the first time on appeal. **Commonwealth v. Watson**, 835 A.2d 786, 791 (Pa. Super. 2003), citing Pa.R.A.P. 302(a). Moreover, "[a] party cannot rectify

the failure to preserve an issue by proffering it in response to a Rule 1925(b) order." *Id.* If the Commonwealth wished for the recusal motion to be heard by another judge, it had every opportunity to request this relief before Judge Williams; it failed to do so. Accordingly, this claim is waived.

Order affirmed.


President Judge Gantman joins this Memorandum.

Judge Shogan concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/9/2016