**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: INVOLUNTARY TERMINATION OF: J.F.E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.E.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 353 MDA 2024 |

Appeal from the Decree Entered February 12, 2024
In the Court of Common Pleas of Lebanon County Orphans' Court at
No(s):  2022-969

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED: JULY 8, 2024**

K.E.S. (Mother) appeals the decree issued by the Lebanon County Orphans' Court, which terminated her rights to her 8-year-old daughter, J.F.E., (the Child), pursuant to the Adoption Act.  **See** 23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), (b).  After careful review, we affirm.[1]

The family came to the attention of the Lebanon County Children & Youth Services (CYS) in July 2021, when the Child was 6 years old.  CYS learned of suspected substance abuse, domestic violence, and housing instability.  In August 2021, CYS received another referral, alleging that

---

[*] Former Justice specially assigned to the Superior Court.

[1] The orphans' court also terminated the rights of J.R., the presumptive father, who did not appeal.  The court also noted that Mother alleged another man, J.M., might have been the Child's biological father; that individual died in 2020.

Mother's paramour had solicited sex from the Child's sister, 16-year-old J.T.[2]

Soon thereafter, the house where Mother lived was condemned. CYS implemented a safety plan, and the Child and her sister went to live with an aunt. A month later, the aunt told CYS she could not care for the Children due to her work schedule. In October 2021, CYS obtained emergency custody, and the Children were placed in foster care.

In November 2021, CYS filed dependency petitions, and the juvenile court adjudicated the Child and her sister dependent in December 2021. The court ordered a reunification plan that consisted of 21 specific objectives. The crux of the plan required Mother to: maintain visitation with the Child and her sister; complete a mental health evaluation and follow treatment recommendations; complete a drug and alcohol evaluation and follow treatment recommendations; submit to drug testing; obtain appropriate housing; and complete parenting classes and demonstrate appropriate parenting skills. The court held permanency review hearings throughout 2022 and 2023.

The juvenile court determined that Mother only made minimal progress on her reunification plan. During 28-month-long dependency proceedings, Mother attended approximately 70% of the visits. However, she had never progressed beyond unsupervised visits. Mother had been in and out of drug abuse counseling on three occasions, having been discharged due to lack of

---

[2] J.T. was not part of these proceedings.

attendance or positive screens. Her most recent screen was in January 2024, the month before the termination hearing. Mother was unable to secure housing for any extended period of time. She never scheduled a mental health evaluation.

CYS petitioned to terminate Mother's rights on November 2022, but the hearing was continued on several occasions. In July 2023, the Child and her sister left their long-term foster placement. There had been tension between the foster parents and the Child's sister. The court had delayed termination, hoping to the keep the siblings together. However, the court determined that it was best for the Child to return to the pre-adoptive foster placement, even though her older sister elected not to return.

The orphans' court ultimately held the termination hearing on February 12, 2024. After taking testimony and evidence, the orphans' court terminated Mother's rights as to 23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5) and (b). Mother timely filed a notice of appeal. She presents the following three issues for our review:

> 1. Did the trial court err in granting the petition for involuntary termination of parental rights when Lebanon County Children and Youth Services failed to meet its burden under 23 Pa.C.S.A. § 2511(a)(1)?
>
> 2. Did the trial court err in granting the petition for involuntary termination of parental rights when Lebanon County Children and Youth Services failed to meet its burden under 23 Pa.C.S.A. § 2511(a)(5)?
>
> 3. Did the trial court err in not permitting Mother to develop testimony regarding the emotional bond with the Child when the court interviewed the Child *in*

*camera* without the presence of Mother's counsel, the Child did not testify at the hearing, and the Child's caseworker was permitted to testify at the hearing to hearsay statements of the Child?

Mother's Brief at 9.

Before we address Mother's appellate issues, we note she neglected to challenge the orphans' court's decision to terminate her rights under Section 2511(a)(2). The termination decree granted the petition generally, but was silent as to which subsections. In the petition, CYS specifically alleged that termination was warranted under Section 2511(a)(1) and (a)(5). **See** Petition for Involuntary Termination of Parental Rights, 11/22/22, at ¶13; ¶21. The court clearly terminated Mother's rights under these subsections.

Critically, the petition also specifically alleged that termination was warranted under Section 2511(a)(2). **See id.** at ¶ 21(h)-(i). However, mention of subsection (a)(2) was buried among those subparagraphs in support of Section 2511(a)(5). **See generally id.** at ¶21(a)-(j). To the extent that the inartful petition was ambiguous, the orphans' court removed all doubt at the termination hearing. There, the court clarified that CYS sought termination under Section 2511(a)(2), and it said it was granting the same. **See** N.T., 2/12/24, at 105-106. At no point did Mother object.

Following the entry of the termination decree, Mother filed a concise statement of matters complained of on appeal, which was also silent as to Section 2511(a)(2). The orphans' court noted Mother's silence in its Pa.R.A.P.

- 4 -

1925(a) opinion, but explained that termination was warranted under Section 2511(a)(2) nevertheless. **See** T.C.O. at 14.

Finally, we note Mother did not mention Section 2511(a)(2) in the statement of questions involved section of her appellate brief. The only real mention Section 2511(a)(2) in her brief was to say, in a footnote:

> Section (a)(2) is not cited as an independent ground for reversal but it was cited by CYS in its petition as part of the grounds for termination within the facts provided for Section (a)(5).

**See** Mother's Brief at 32-33.

If Mother means that Section 2511(a)(2) was an inappropriate basis for termination, given the CYS's inartful termination petition, she does not specifically say so, let alone argue the point. If Mother concedes that the orphans' court terminated her rights under Section 2511(a)(2) but maintains that a remand would still be appropriate under (a)(1) or (a)(5), she is mistaken.

It is well settled that any claims not raised before the trial court are waived. **See** Pa.R.A.P. 302(a). Also well settled, we need only agree with the orphans' court as to any one subsection under Section 2511(a), as well as Section 2511(b), to affirm the termination. **See, e.g., In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, CYS properly petitioned for termination under Section 2511(a)(2) **inter alia**, and the orphans' court terminated Mother under Section 2511(a)(2) **inter alia**. Because Mother did not challenge the court's decision under (a)(2), we may not disturb it. Thus,

because Mother waived any challenge to termination under Section 2511(a)(2), her challenges under Section 2511(a)(1) and (a)(5) are moot. *See, e.g., Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.").

The rights and interests at stake in a termination matter cannot be understated. There should be no confusion as to what grounds are sought and what grounds are warranted. Such confusion has the potential to cause unnecessary delay, which in turn causes unnecessary harm to the children at issue. To remove the possibility of confusion, we encourage all involved to make additional effort to remove the possibility of confusion, beyond what is strictly necessary. In a perfect world, the termination petition would clearly identify the individual 2511(a) subsections; the same would be restated on the record during the termination hearing (as done here); and the same would be specifically mentioned in the decrees. We are loathe to affirm an involuntary termination on mere technicalities. For the sake of completeness, we address in *dicta* Mother's challenge as relates to Section 2511(a)(5).

We begin with our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's

> decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. *In re Adoption of L.A.K.*, 265 A.3d 580, 597 (Pa. 2021); *see also Interest of S.K.L.R.*, 256 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving…the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports the trial court's conclusions; the appellate court should not search the record for contrary conclusions or substitute its judgment for that of the trial court."). The abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that the record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination." *In re P.Z.*, 113 A.3d 840, 849 (Pa. Super. 2015) (citation omitted); *see also T.S.M.*, 71 A.3d at 267.

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

**In re C.M.K.**, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted); see also **Int. of M.E.**, 283 A.3d 820, 830 (Pa. Super. 2022).

Section 2511(a) provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> [...]
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(5).

The orphans' court explained that the Child had been outside of Mother's care for approximately 31 months (28 months since the Child was adjudicated dependent). In that time, Mother was unable to remedy the conditions which led to the Child's placement. Mother continued to test positive for illegal substances, including cocaine in January 2024 – one month before the termination hearing. She had yet to obtain stable housing. She was never granted unsupervised visitation. Given the history of the case, the court determined that Mother was not likely to remedy these conditions within a reasonable period of time. The court also found that termination would best serve the Child's needs and welfare. In its Pa.R.A.P. 1925(a) opinion, the court stated:

> Regarding 23 Pa.C.S. § 2511(a)(5), the conditions which led to the removal and placement of [the] Child are essentially unchanged. After a reasonable period of time and services and assistance available to the Mother, [the] Child would not even have a home to return to. Again, given Mother's continued unemployment and battle with drugs and alcohol abuse, it is hard to envision that situation will change anytime soon. [The] Child deserves to live in a stable environment with the security provided by properly attentive parents. Thus, termination of Mother's parental rights would best serve [the] Child's needs and welfare.
>
> The reality is that Mother has spent approximately 43 hours with the [] Child, during the time the [] Child has been in care. Visits never progressed beyond one (1) hour per visit. To date, she has not had any unsupervised visits with [the] Child. This Court has no doubt that Mother loves the [] Child and the [] Child loves Mother. However, 43 hours over the course of 31 months is not enough to maintain that bond. While [the] Child refers to Mother as "Mom", she calls her foster parents "Mom and Dad". No one has presented persuasive evidence to this Court that gives us a reason to

believe that terminating the bond between Mother and the [] Child would have a serious negative impact on [the] Child.

The reason the Court refused to terminate Mother's parental rights earlier in this case, despite her lack of progress in accomplishing the CPP goals, was due to the bond that the Court observed between [the] Child and J.T. As noted above, the siblings were initially placed together with Aunt, and then into the same foster home. While J.T., who is now 17 years old, is opposed to being adopted, the [orphans' court] felt the relationship between [the] Child and J.T. was strong enough that we did not want to split them up. Unfortunately, J.T. chose to leave the foster home that [the] Child remained in, and their bond dissipated over time. The notes from the Youth Advocate Program indicate that during a typical visit, Mother and her children attempt to interact with each other for about 15 minutes, and then [the] Child leaves to play with toys, and Mother and J.T. are on their phones for most of the remainder of the visit.

[The] Child has been in her current foster placement since mid-2021. [The] Child has a strong and positive bond with the foster family. [The] Child calls the foster mother "Mom", the foster father "Dad", and she plays with the other foster child in the home like they were siblings. The foster parents are able to manage [the] Child's current services in terms of counseling and mental health treatment. The foster family is willing to be an adoptive resource and the Agency will be looking to have [the] Child adopted since parental rights were terminated.

T.C.O. at 14-15 (citations to the record omitted).

On appeal, Mother did not challenge any of these findings. Rather, she argued that she could remedy the conditions which led to the Child's placement in a reasonable time:

The progress that Mother has made in her situation shows that she may be able to remedy these conditions within a reasonable time. Mother testified to finding employment being difficult while she had ongoing counseling sessions that would interfere with such employment. Surely,

- 10 -

> Mother's sobriety would be the first step to obtaining gainful employment and then stable housing. One step to be made successfully before moving on to the others. The realities of intensive treatment make the employment search very difficult.

Mother's Brief at 35.

Contrary to Mother's framing of the issue, the orphans' court did not terminate her rights because she had difficulty finding employment. Mother received services for **years**. After all that time, the conditions which led to the Child's removal remained. It was not an abuse of discretion for the orphans' court to conclude that Mother could not remedy those conditions within a reasonable period of time.

In sum, even if we overlooked Mother's waiver as to Section 2511(a)(2), we still would have concluded that the orphans' court properly terminated Mother's rights under Section 2511(a)(5). Mother's first two appellate issues merit no relief.

Mother's final appellate issue pertains to Section 2511(b), the second prong of the bifurcated termination analysis. That subsection provides:

> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. […].

23 Pa.C.S.A. § 2511(b).

Part of the Section 2511(b) analysis involves the parent-child bond. Specifically, courts must determine whether the child has a bond with the biological parent, the nature of that bond, and effect that severance of the bond would have on the child. ***In the Interest of K.T.***, 296 A.3d 1085, 1109 (Pa. 2023) (citing ***T.S.M.***, 71 A.3d at 267, 269).[3]

On appeal, Mother argues the orphans' court inappropriately obtained information relating to the parent-child bond, when the court conducted an *in camera* interview of the Child, without either Mother or her attorney present. However, Mother raises an evidentiary claim – not a due process claim. According to her, the court erred when it admitted hearsay testimony from the CYS caseworker and did not permit her from developing similar testimony. ***See*** Mother's Brief at 9, 41-44.

By way of background, the orphans' court explained that it scheduled a permanency review hearing to take place immediately after the termination hearing, a standard practice. In preparation of the permanency review

_____

[3] We note, however, that our Supreme Court recognized that severance of ***any*** bond could have an "adverse impact" and upset the child. Therefore, courts must focus on the ***nature*** of the bond commensurate with the impact of severing that bond. ***K.T.***, 296 A.3d at 1109-1110 (footnotes and internal citations omitted).

Moreover, the Supreme Court also cautioned the parent-child bond inquiry is but one factor to consider under a proper Section 2511(b) analysis. ***Id.*** at 1111 (citing ***In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011)). "[B]ond, ***plus*** permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the Section 2511(b) analysis." ***Id.*** at 1109 (emphasis added).

hearing, the court met with the Child. Evidently, the court met with the Child before either hearing occurred. The court explained:

> The court generally meets with a young child, their [guardian *ad litem*] and [the CYS caseworker] before the hearing. The court does not question the child regarding the termination of parental rights, but engages them in conversation to get a sense of their connections to parents and siblings, and their adjustment to placement.

T.C.O. at 16.

In its Appellee Brief, CYS added:

> In an attempt to utilize [the court's] time efficiently, a permanency review hearing is customarily held directly after a termination of parental rights hearing. Pa.R.J.C.P. 1128 and 1129 compel the [] Child to be physically present for dependency hearings so the trial court can observe her development and health. (**See** Comment to Pa.R.J.C.P 1128). As part of those hearings, the trial court is to hear directly from [the] Child about her wishes regarding the permanency plan. (**See** PA Benchbook Chapter 13). Given her young age, the [court] excluded her from the proceedings. With the long history and the many continuances for this hearing, the [court] had met with the [] Child on numerous occasions as part of the dependency case, and the *in camera* meeting with her on February 12, 2024, was no different. The [court] indicated that the conversation with the [] Child was not about the termination proceedings, but rather a general check in about how she was doing, as required for the ongoing dependency case.

CYS's Brief at 24-25.

Mother argues the orphans' court was able to ascertain the Child's best interests, for purposes of the Section 2511(b) analysis, from this meeting. She maintains the court then admitted hearsay testimony about the same from the CYS caseworker. Finally, Mother claims the court then prevented her

from developing testimony which would demonstrate the existence of a parental bond:

> Given that the orphans' court found termination appropriate, the analysis turned to the factors regarding whether termination was in the best interests of the Child and consideration of any parental bond. The court had an ability to get "a sense of their connection to parents" which is a relevant consideration. Even now, the exact nature of the trial court's interview with the Child and the information learned is unknown.
>
> Notice of an *in camera* interview with the Child should have been provided in the order scheduling the termination hearing so that all parties had an opportunity to be present and/or request that the interview be recorded.
>
> Instead, the first reference to the *in camera* interview is mid-hearing. Mother's counsel made a request for continuance when it was learned that the Child was no longer present. The court requested that the Child be returned to court but did not further address the issue.

Mother's Brief at 42-43 (style adjusted).

First and foremost, Mother's characterization of what transpired is inaccurate. During the termination hearing, counsel for CYS asked the caseworker to describe the "bond or relationship" between Mother and the Child. **See** N.T. at 32. The caseworker was about to relay what the Child said when Mother's counsel objected, questioning whether the witness had firsthand knowledge. **Id.** With guidance from the orphans' court, Mother clarified that she objected on hearsay grounds. The court sustained the hearsay objection. **Id.** at 32-33. However, the court ruled - without objection – that the caseworker could still testify about the Child's reaction when

learning of the purpose of the hearing was to terminate Mother's rights. ***Id.*** at 33. The caseworker testified that the Child's "face lit up." ***Id.*** at 34.

Importantly, Mother never mentioned her lack of notice, or took issue with the court's *in camera* interview, or procedure. She did not raise any sort of due process claim or otherwise alert the court of her right to be present during the Child's interview. The sole issue concerned hearsay; when asked about the parental bond, the caseworker attempted to respond by relaying what the Child said. During the ensuing sidebar, counsel for CYS argued that the Child was a party, and thus the Child's statements could be admitted. Counsel for Mother responded that if the Child were to be treated as a party, then she should be entitled to a continuance so the Child could testify and be questioned. ***See*** N.T. at 33. To assuage Mother's concern, there was a brief discussion about whether the Child was still in the courthouse. ***Id.*** at 33-34.

The court then said:

> So you [(Mother's counsel)] got a couple choices. You can get [the Child] back here. We can all talk to [the Child,] or we can find out just how [the Child] acted on her own. So while you're thinking about that, I need somebody to go get [the Child] back here. If that's what you want to do, we can do that.
>
> Why don't you [(the caseworker)] tell us how [the Child] acted when you spoke to her about what today was about, not what she said, but how she acted?

*Id.* The caseworker testified that the Child's face lit up.[4]  *Id.* at 34.  The caseworker's examination continued without objection.

The claim that the court admitted the Child's out-of-court statements is a false characterization.  In actuality, the court sustained Mother's objection.  Moreover, the court did not deny Mother's request for a continuance.  Mother only "requested" a continuance as a hypothetical, if the court were to admit the hearsay statements, and then only if the Child were unavailable.  *Id.* at 33.  However, the Child's statements were not admitted, and as far as we can discern, the Child was available to testify.  We cannot be sure about the Child's availability, because Mother never attempted to call the Child as a witness.  In short, we discern no error of law or abuse of discretion. Whatever issue Mother had with the court's procedure or evidentiary rulings, she did not preserve the claim and thus the issue is waived.  *See* Pa.R.A.P. 302(a).[5]

_____

[4] If anything, this testimony merely suggests that the Child's "preferred outcome" – i.e., legal interests – was termination.   Courts presiding over contested termination proceedings **must** ascertain these facts when determining whether there is a conflict with the Child's legal representation.  *See In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017) and its progeny.  Although we note that, in this case, the court did not have to discern whether there was a conflict, because the Child was already appointed counsel separate from her guardian *ad litem.*

We note further that the court said at the conclusion of the termination hearing: "…I bet if I asked [the Child] do you love your Mom, her face would light up too."  *See* N.T. at 93.

[5] Although Mother does not raise a due process challenge, we understand Mother's concern with the court's procedure.  While the meeting with the Child pertained to the permanency review hearing, the court might have put the
*(Footnote Continued Next Page)*

To conclude, we discern no error or abuse of discretion pertaining to the orphans' court's decision to terminate Mother's rights. Mother waived her challenge to Section 2511(a)(2), as well as her challenge to the court's evidentiary ruling insofar as they relate to Section 2511(b). Even if we did not find waiver as to (a)(2), we nevertheless would have affirmed the termination under Section 2511(a)(5).

---

proverbial cart before the horse by conducting the interview before the termination hearing, without Mother's or her counsel's presence. This procedure might suggest that the court felt Mother's presence would be unnecessary since her rights were to be terminated imminently.

But even if we were to hold that the orphans' court's procedure was erroneous, the error would be harmless. A termination proceeding is often the culmination of dependency proceedings, which have transpired over the course of months if not years. Judges presiding over these cases are intimately familiar with the parties. Indeed, our Supreme Court has recognized the importance of the juvenile court's "longitudinal understanding" of the case. **See In re R.J.T.**, 9 A.3d 1179, 1190 (Pa. 2010). Our juvenile judges understand when and how the Juvenile Act intersects with the Adoption Act, and we presume they know what they may fairly consider, and for what purpose. **See, e.g., Commonwealth v. Druce**, 848 A.2d 104, 108 (Pa. 2004) ("This Court presumes judges of this Commonwealth are 'honorable, fair, and competent[.]'"). Instantly, there is nothing in the record to suggest that the orphans' court inappropriately ascertained *ex parte* information to decide whether the termination of Mother's rights was in the Child's best interests.

Decree affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 7/8/2024