J-S02028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| TYESHA MACK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DIAMOND BILLUPS AND JEFFREY | : | No. 2380 EDA 2024 |
| JOLLY | : | |

Appeal from the Order Entered August 12, 2024
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  0C1706025

BEFORE:  LAZARUS, P.J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 7, 2025**

Appellant, Tyesha Mack ("Maternal Grandmother"), appeals *pro se* from the August 12, 2024 order that granted the petition to modify custody filed by her daughter, Appellee Diamond Billups ("Mother"), and awarded Mother and Jeffrey Jolly ("Father") sole legal and primary physical custody of their son, seven-year-old D.J. ("Child").  The order also awarded Maternal Grandmother partial physical custody of Child every other weekend.  Maternal Grandmother raises challenges to trial court's credibility determinations and weight of the evidence, and she asserts allegations of judicial bias.  Upon careful review, we affirm.

The relevant factual and procedural history is as follows.  On February 2, 2022, Maternal Grandmother filed a complaint for custody of Child.  On April 28, 2022, the trial court granted Maternal Grandmother sole legal and

primary physical custody of Child, after Mother and Father both failed to appear for trial despite receiving proper notice.

On May 10, 2023, Mother filed a petition for modification requesting sole legal and primary physical custody of Child. On January 22, 2024, after a custody hearing, the court entered a temporary order awarding Mother and Father sole legal and primary physical custody of Child and awarding Maternal Grandmother partial physical custody of Child every other weekend.

On August 12, 2024, the court held a custody hearing. Mother and Father appeared *pro se.* Maternal Grandmother appeared with counsel. The court heard testimony from Mother, Father, Maternal Grandmother's mother ("Great Grandmother"), Maternal Grandmother, and Child.

In sum, Mother and Father testified that they currently live together in an adequate three-bedroom house with Child's one-year-old sibling, they have lived in the house for the past three years, Father is employed as a home healthcare aid for his mother, they have adequate income for food, and domestic violence is not occurring in the home. Mother and Father also testified that Child lived with them from his birth until 2022 when the trial court awarded Maternal Grandmother sole legal and primary physical custody after Mother and Father failed to appear in court.

In turn, Maternal Grandmother testified that Mother does not have a permanent address, domestic violence occurs frequently between Father and Mother, and Child has seemed depressed and unconcerned with personal hygiene since he has been living with Mother and Father after the trial court

- 2 -

issued the temporary custody order. Maternal Grandmother testified that she has always been Child's primary caretaker, because Mother was a teenager when she gave birth to Child.

After considering the 23 Pa.C.S § 5328 custody factors on the record, and finding Mother and Father's testimony to be credible, the trial court granted Mother's petition to modify. The court entered a final order, which confirmed the January 22, 2024 temporary order, awarded Mother and Father sole legal and primary physical custody of Child, and awarded Maternal Grandmother partial physical custody of Child every other weekend.

Maternal Grandmother filed a timely *pro se* appeal. Both Maternal Grandmother and the trial court complied with Pa.R.A.P. 1925.

In her *pro se* brief, Maternal Grandmother raises the following issues for our review:

1. Did the trial court err[] in violating [Maternal Grandmother]'s right to a fair trial by demonstrating clear favoritism towards the petitioners. This bias was evident when the judge, during the proceedings, assured the petitioners by stating, "I got you, I got you," indicating a predetermined decision to award them custody of [Child]. Such conduct is in direct contravention of the principles outlined in 23 Pa.C.S. § 5328(a) which mandates that custody decisions be made on a thorough and impartial consideration of all relevant factors to determine the best interests of the child.

2. Did the trial court err[] in awarding primary physical custody to [Mother] and [Father], despite substantial evidence demonstrating that such arrangement is not in the best interest of [C]hild [] due to the fact that neither petitioner presented proof of having a job or a stable place of residence in accordance [with] 23 Pa.C.S. § 5328[(a)?]

3. Did the trial court err[] by failing to consider all relevant factors to determine the best interest of [C]hild's safety, mental health, emotional needs, and well-being [] before making a custody determination in accordance [with] 23 Pa.C.S. § 5328[(a)?]

4. Did the trial court err[] in its decision to remove [C]hild [] from Maternal Grandmother['s] home [] whom he lived with and has been his guardian since the age of three months old. Was [the decision] arbitrary and not supported by evidence presented during the trial [] in accordance with 23 Pa.C.S. §5328[(a)?]

5. Did the trial court err[] in failing to create a full and complete record in order to fully address Child's best interest [] in accordance [with] 23 Pa.C.S. § 5328[(a)?]

6. Did the trial court err[] in failing to address and appropriate[ly] weigh the testimony of [Maternal Grandmother's mother] of [d]omestic [v]iolence at [C]hild's place of residence between [] Mother and [F]ather [] in accordance [with] 23 Pa.C.S. § 5328(a)?[1]

7. Did the trial court err[] in failing to address and give appropriate weight to the testimony and evidence presented regarding the Mother[] and Father's inability to co-parent with on another [] in accordance [with] 23 Pa.C.S. § 5328[(a)?]

8. Did the trial court err[] in failing to consider the impact of the new custody on [C]hild's mental stability after living with [Maternal Grandmother] for the whole of his life 7 years [] which [was not in] accordance [with] 23 Pa.C.S. § 5328[(a)?]

Maternal Grandmother's Br. at 5-7 (reordered and renumbered for ease of disposition).

_____

[1] Maternal Grandmother failed to include this issue in her Statement of Questions Involved but included the issue in her Rule 1925(b) statement and addressed the issue in the Argument section of her brief. Accordingly, we will address this issue.

This Court reviews a custody determination for an abuse of discretion, and "our scope of review is broad." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014). This Court will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." ***In re K.D.***, 144 A.3d 145, 151 (Pa. Super. 2016). This Court must accept the findings of the trial court that the evidence supports. ***S.W.D.***, 96 A.3d at 400. Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." ***K.T. v. L.S.***, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). We can interfere only where the "custody order is manifestly unreasonable as shown by the evidence of record." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Further, in a custody case, relief is not warranted unless the party claiming error suffered prejudice from the mistake. ***J.C. v. K.C.***, 179 A.3d 1124, 1129-30 (Pa. Super. 2018).

Pennsylvania law provides that the trial court is only empowered to change an existing custody order if the modification will "serve the best interest of the child." 23 Pa.C.S. § 5338(a). Indeed, when reviewing child custody matters, "[o]ur paramount concern and the polestar of our analysis" is the best interests of the child. ***Saintz***, 902 A.2d at 512 (citation omitted). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." ***D.K.D. v. A.L.C.***, 141 A.3d 566, 572 (Pa.

Super. 2016) (citations omitted). "Common sense dictates that trial courts should strive, all other things being equal, to assure that a child maintains a healthy relationship with both of his or her parents, and that the parents work together to raise their child." *S.C.B. v. J.S.B.*, 218 A.3d 905, 916 (Pa. Super. 2019).

The trial court "shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors . . . which affect the safety of the child," including the enumerated factors mandated by the Custody Act. 23 Pa.C.S. § 5328(a) and (c). The court must "delineate the reasons for its decision[.]" *Id.* at § 5323(d). In any action regarding the custody of the child between the parents of the child and a nonparent, including a grandparent, "there shall be a presumption that custody shall be awarded to the parent." 23 Pa.C.S. § 5327(b). Even if a grandparent attains standing through *in loco parentis* status, it does "not alter her role as a third-party challenger" to a parent's request for primary physical custody. *M.J.S. v. B.B.*, 172 A.3d 651, 660 (Pa. Super. 2017). A grandparent may rebut this presumption by clear and convincing evidence. *Id.* This Court has defined clear and convincing evidence "as presenting evidence that is so clear, direct, weighty, and convincing so as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Id.* (quotation marks and citations omitted).

As our Supreme Court has explained, "[w]hile acknowledging the general benefits of these relationships, we cannot conclude that such a benefit

always accrues in cases where grandparents force their way into grandchildren's lives through the courts, contrary to the decision of a fit parent." *Hiller v. Fausey*, 904 A.2d 875, 886 (Pa. 2006). Thus, in a custody dispute for primary physical custody of a child that occurs between parents and a grandparent, "even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the [biological] parents' side." *Charles v. Stehlik*, 744 A.2d 1255, 1258 (Pa. 2000) (citation omitted). "What the judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side." *V.B. v. J.E.B.*, 55 A.3d 1193, 1199 (Pa. Super. 2012) (citation omitted).

In her first issue, Maternal Grandmother avers that the trial court judge exhibited favoritism and bias towards parents by stating, "I got you" to parents multiple times during the custody hearing. Maternal Grandmother's Br. at 6-7. Maternal Grandmother argues that this indicates that the court had a "predetermined decision" to award custody to parents. *Id.* at 7. This issue lacks merit.

Notably, this Court "presumes judges of this Commonwealth are honorable, fair and competent[.]" *Commonwealth v. Druce*, 848 A.2d 104, 108 (Pa. 2004) (citation and internal quotation marks omitted). Upon review, Maternal Grandmother clearly mischaracterizes the trial court judge's actions. In its opinion, the trial court judge categorically denies saying "I got you" to

any party during the custody proceedings. Instead, the trial court judge explained, she stated "got it" or "I got it" in response to testimony from parents, as well as Maternal Grandmother, to "verbalize only an understanding of the context of the testimony, not a judgment about the testimony." Trial Ct. Op., dated 10/10/24, at 13 (citing N.T. Trial, 8/12/2024, at 149). The trial court judge opined that the court's remarks needed to be "contextualized within the broader proceedings" and emphasized that "the [c]ourt's ultimate decision was based on a thorough evaluation of the evidence and without bias to any one party, maintaining the integrity of the trial." *Id.* We agree and discern no abuse of discretion.[2]

In her remaining seven issues, Maternal Grandmother raises challenges to the trial court's credibility determinations as well as to the weight of the evidence.[3] The Honorable Betsy Wahl has written a comprehensive, thorough, and well-reasoned opinion, including a discussion of relevant case law and the Custody Act, to explain why the court awarded parents sole legal and primary physical custody of Child. *See* Trial Ct. Op. at 4-15. In sum, the court applied

_____

[2] To the extent that Maternal Grandmother raises additional allegations of bias against the trial court judge for the first time in her brief, those arguments are waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.")

[3] To the extent that Maternal Grandmother raises additional allegations that the trial court failed to consider custody factors enumerated under Section 5328(c) regarding an award of partial physical custody to grandparents and great-grandparents, these arguments are waived because they are being raised for the first time on appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.")

the Section 5327 presumption that custody shall be awarded to the parent

and found that Maternal Grandmother failed to present clear and convincing

evidence to rebut that presumption. The court opined:

> This [c]ourt's focus is always on the best interest of the Child. Maternal Grandmother may have provided a stable and nurturing environment for [Child] at some points of Mother's minority, but that history does not override Mother and Father's rights as [Child]'s legal parents. . . .This [c]ourt found no compelling evidence of abuse, neglect, or incapacity presented by Maternal Grandmother. . . . The presumption favoring parental custody remains strong in cases of intact families, and the evidence presented does not support a finding of unfitness or exceptional circumstances warranting a change at this time. Mother and Father are currently an intact family, and they have been an intact family since [Child]'s birth . . . . After hearing all of the evidence presented at trial, this [c]ourt gave careful consideration to all [the] custody factors, and the resulting final custody order was based on those considerations. Although there were discrepancies that occurred in the testimony of the parties, this [c]ourt ultimately found Mother and Father's testimony more credible than Maternal Grandmother's.

Trial Ct. Op. at 5-6. The court then proceeded to address each of Maternal

Grandmother's issues in turn. Following our review, we adopt the trial court's

opinion as our own with regards to issues two through eight. *See id.* at 4-15

(addressing each issue raised in Maternal Grandmother's Rule 1925(b)

statement and concluding: (1) Mother and Father testified credibly that they

live together and that Father is employed; (2) the court thoroughly considered

and reviewed all of the Section 5328 custody factors to determine what

custody arrangement would be in Child's best interest; (3) the trial court's

decision to award Mother and Father primary physical custody was based on

- 9 -

sufficient and credible evidence regarding Child's welfare under the custody factors and was neither arbitrary nor capricious; (4) the court maintained an accurate and thorough record throughout the trial and evaluated the relevant custody factors on the record; (5) the court considered Maternal Great Grandmother's testimony regarding the existence of domestic violence between Mother and Father, but concluded that Mother and Father's testimony denying a history of domestic violence was more credible; (6) Mother and Father's ability to co-parent with each other is not one of the enumerated custody factors that the trial court is compelled to consider; and (7) the court heard conflicting testimony regarding how long Child previously resided with Maternal Grandmother but recognized the emotional bond between Maternal Grandmother and Child, considered Child's mental stability, and ultimately concluded that Child would benefit from the changed custody arrangement of residing with his intact family, including his younger sibling). The record supports the trial court's findings and, as always, we decline to reweigh the evidence or usurp the trial court's credibility determinations. Accordingly, we discern no trial court error.

In sum, our review of the record fails to reveal any trial court bias. Moreover, the trial court did not abuse its discretion when it applied the Section 5327(b) presumption that custody shall be awarded to the parents and awarded sole legal and primary physical custody of Child to parents and partial physical custody to Maternal Grandmother.

The parties are instructed to attach a copy of the trial court's October 10, 2024 opinion to all future filings.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/7/2025



0C1706025 057

**IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
FAMILY COURT DIVISION**

| | | |
|---|---|---|
| T.M., | : | IN CUSTODY: 0C1706025 |
| Appellant/Maternal Grandmother | : | |
| | : | |
| v. | : | |
| | : | |
| D.B., | : | SUPERIOR COURT |
| Appellee/Mother | : | |
| | : | |
| & | : | |
| | : | |
| J.J., | : | |
| Appellee/Father | : | NO.: 2380 EDA 2024 |

Filed
OCT 10 2024
Clerk of Family Court 2

## OPINION

**Wahl, J.**

Appellant, T.M. ("Maternal Grandmother") appeals this Court's August 12, 2024 Order granting Appellee, D.B.'s ("Mother") Complaint for Custody against Appellee, J.J. ("Father") and Petition for Modification against Maternal Grandmother. Mother and Father are the parents of two (2) minor children: D.J., age 7 and A.J., age 1. Maternal Grandmother filed a timely Notice of Appeal from the August 12, 2024 Order. Maternal Grandmother's challenge to the final order is without merit, and the order of August 12, 2024 should be affirmed for the reasons set forth in this opinion.

## RELEVANT PROCEDURAL HISTORY

On April 28, 2022, Maternal Grandmother appeared before the Honorable Mark B. Cohen on her Complaint for Custody, which was filed on February 2, 2022. Maternal Grandmother was awarded sole legal and sole primary custody of D.J. without prejudice to Mother and Father who both failed to appear despite proper notice.

1



On May 10, 2023, Mother, pro se, filed a Complaint for Custody ("Complaint") for one child, A.J., requesting sole legal and sole physical custody, and a Petition for Modification ("Petition") for one child, D.J., requesting a modification of the April 28, 2022 Order requesting sole legal and sole physical custody.

On January 22, 2024, Mother and Father appeared pro se, and Maternal Grandmother appeared with then-counsel, for Mother's Complaint and Petition. On that date, this Court found Mother and Father credible and entered a temporary order granting Mother and Father sole legal and primary physical custody of D.J., with Maternal Grandmother having partial physical custody every other weekend. No order was entered for A.J.

On August 12, 2024, Mother and Father appeared pro se, and Maternal Grandmother appeared with new counsel, for Mother's Complaint and Petition. Regarding A.J., a final order was entered awarding Mother and Father sole legal and sole physical custody. Regarding D.J., a final order was entered awarding Mother and Father sole legal custody and primary physical custody. Maternal Grandmother was awarded partial physical custody every other weekend only for D.J.

On September 11, 2024, Maternal Grandmother, pro se, filed this timely Appeal along with a Concise Statement of Errors Complained of On Appeal.

## CONCISE STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

1. The trial court erred in awarding primary physical custody to [Mother] and [Father] despite substantial evidence demonstrating that such an arrangement is not in the best interest of the child. Due to the fact that neither petitioner present proof of having a [j]ob or a stable place of residence [i]n accordance to 23 PA.C.S. § 5328.

2

2. The trial court erred by failing to consider all relevant factors to determine the best interest of the child's safety, mental health, emotional needs, and well-being. Before making a custody determination [i]n accordance to 23 PA.C.S. § 5328.

3. The trial court erred in its decision to remove child "Dylan Jolly" from Maternal Grandmother "Tyesha Mack" home. Whom he lived with and has been his guardian since the age of three months old. Was arbitrary and not supported by evidence presented during the trial. In accordance with 23 PA.C.S. § 5328.

4. The trial court erred in failing to create a full and complete record in order to fully address Child's best interest. In accordance to 23 PA.C.S.§[.]

5. The trial court erred in failing to address and appropriate weigh the testimony of Appellants Mother (Childs maternal great grandmother) of [d]omestic [v]iolence at the [c]hild's place of residence between child's Mother and Father [i]n accordance to 23 PA.C.S. § 5328.

6. The trial court erred in failing to address and give appropriate weight to the testimony and evidence presented regarding the Mother's and Father's inability to co-parent with one another. In accordance to 23 PA.C.S. § 5328.

7. The trial court erred in violating the Appellant's right to a fair trial by demonstrating clear favoritism towards the Petitioners. This bias was evident when the judge, during the proceedings, assured the Petitioners by stating, "I got you, I got you," indicating a predetermined decision to award them custody of the child, Dylan Jolly. Such conduct is in direct contravention of the principles outlined in 23 PA.C.S. § 5328, which mandates that custody decisions be made based on a thorough and impartial consideration of all relevant factors to determine the best interests of the child[.]

3

8. The trial court erred in failing to consider the impact of the new custody on the child's mental stability after living with Appellant Tyesha Mack, (Childs maternal grandmother) for the whole of his 7 years. Which wasn't in accordance to 23 PA.C.S. § 5328.

## STANDARD OF REVIEW

The standard of review in a child custody matter is abuse of discretion. *C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012). Findings of the trial court, which are supported by the record, issues of witness credibility, and weight of the evidence, should be deferred to the trial judge. *Id.* The conclusions of the trial judge may be rejected if they involve an error of law or are unreasonable. *Id.* "The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned." *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004).

## ANALYSIS

It is this Court's understanding that Maternal Grandmother is not challenging the final order regarding child A.J., but only the portion with regards to child D.J. When asked by this Court whether it is "fair to say... that grandmother isn't trying to have any kind of custody of Ahmad," Maternal Grandmother responded, "[t]his case wasn't about Ahmad." (N.T., p. 77, 3-13).

This Court did not err in its custody determination as it thoroughly evaluated all custody factors related to the best interest of the child. The court's decision was grounded in a comprehensive review of the evidence presented, which included testimonies from both Mother and Father, Maternal Grandmother, and Maternal Grandmother's witness, H.P. ("Maternal Great Grandmother"). This Court's focus is always on the best interest of the Child. Maternal

4

Grandmother may have provided a stable and nurturing environment for D.J. at some points of Mother's minority, but that history does not override Mother and Father's rights as D.J.'s legal parents.

The law generally presumes that fit parents should retain custody over third parties, including grandparents. The Court in *K.T. v. L.S.* provides that "[w]hile acknowledging the general benefits of these relationships, we cannot conclude that such a benefit always accrues in cases where grandparents force their way into grandchildren's lives through the courts, contrary to the decision of a fit parent." 2015 PA Super 141, 118 A.3d 1136, 1160–61 (2015). Under 23 Pa.C.S.A. § 5327(b), when a third party is filing for primary physical custody against a natural parent, there shall be a presumption that the custody should be awarded to the natural parent. The presumption may be rebutted by clear and convincing evidence. Thus, the judge must hear all evidence relevant to the child's best interest and then decide whether evidence on behalf of third parties is weighty enough to tip the scales from the parents' side to the third party's side. *In re Donna W.*, 425 A.2d 1132 (1981). Maternal Grandmother must provide evidence that parents are either unfit, or that it would not be in the Child's best interest to reside primarily with parents. Maternal Grandmother's argument hinges on a claim of perceived unfitness of the parents; however, this Court found no compelling evidence of abuse, neglect, or incapacity presented by Maternal Grandmother. Maternal Grandmother failed to establish any exceptional circumstances that would necessitate her assumption of primary custody. The presumption favoring parental custody remains strong in cases of intact families, and the evidence presented does not support a finding of unfitness or exceptional circumstances warranting a change at this time. Mother and Father are currently an intact family, and they have been an intact family since

5

D.J.'s birth. At one point, Mother provides that her and Father "have been together for ...near twelve years." (N.T., p. 31, 7-11).

After hearing all of the evidence presented at trial, this Court gave careful consideration to all sixteen custody factors, and the resulting final custody order was based on those considerations. 23 Pa.C.S. § 5328(a); (N.T., pp. 156-162). Although there were factual discrepancies that occurred in the testimony of the parties, this Court ultimately found Mother and Father's testimony more credible than Maternal Grandmother's.

**I. Pursuant to Pa.R.A.P. 1925(b)(4)(ii), Maternal Grandmother's issues complained of on appeal should be waived for failure to concisely identify each ruling or error with sufficient detail.**

Pennsylvania Rules of Appellate Procedure state an Appellant's 1925(b) statement "shall concisely identify each ruling or error that the Appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). A concise statement of errors must be specific enough for the trial court to identify and address each issue the Appellant wishes to raise on appeal. *See In re A.B.*, 63 A.3d 345, 350 (Pa.Super. 2013). A 1925(b) statement "which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all." *Commonwealth v. Dowling*, 788 A.2d 683, 686-687 (Pa. Super 2001). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Id.*

In *Dowling*, the Appellant raised the following issue in his Rule 1925(b) statement:

> The court erred and deprived the defendant from receiving a fair trial by prohibiting counsel from cross examining based on a prior inconsistent statement of an eyewitness on the issue of identification. *Id.* at 686.

6

In its opinion, the trial court wrote: "As Defendant did not state which witness or what statement he is referring to, this Court cannot fully address this issue." *Id.* On this issue, the Court held that the issue was waived because the Appellant's 1925(b) statement was not specific enough for the trial court to identify and address the issue. *Id.*

In the instant matter, Maternal Grandmother's failure to set forth issues that she sought to raise on appeal in a specific, concise manner hinders this Court's ability to prepare an opinion for meaningful review, thereby frustrating this Court's ability to engage in a thorough and effective appellate review process.

Maternal Grandmother's second issue states:

> "The trial court erred by failing to consider all relevant factors to determine the best interest of the child's safety, mental health, emotional needs, and well-being before making a custody determination in accordance to 23 PA.C.S. § 5328."

Maternal Grandmother's third issue states:

> "The trial court erred in its decision to remove child [D.J.] from Maternal Grandmother's home. Whom he lived with and has been his guardian since the age of three months old. Was arbitrary and not supported by evidence presented during the trial. In accordance with 23 PA.C.S. § 5328."

Maternal Grandmother's fourth issue states"

> "The trial court erred in failing to create a full and complete record in order to fully address Child's best interests. In accordance to 23 PA.C.S. §"

Maternal Grandmother's sixth issue states:

> "The trial court erred in failing to address and give appropriate weight to the testimony and evidence presented regarding the Mother's and Father's inability to co-parent with one another. In accordance to 23 PA.C.S. § 5328."

Maternal Grandmother's eighth issue states:

> "The trial court erred in failing to consider the impact of the new custody on the child's mental stability after living with Appellant [Maternal Grandmother] for the whole of his life 7 years. Which wasn't accordance to 23 PA.C.S. § 5328."

7

The numerous claims Maternal Grandmother states above are blanket statements about the Court's alleged misconduct that lack any specificity as to what Maternal Grandmother is seeking to challenge. This Court is unable to ascertain the reason that Maternal Grandmother is claiming that this Court erred due to the overly broad statements. This Court is unable to respond efficiently because Maternal Grandmother failed to be specific enough for this Court to identify and address each issue or evidence that Maternal Grandmother wishes to challenge. Maternal Grandmother submits vaguely prepared statements, not sufficiently specific enough to allow this Court to draft its opinion required under 1925(a); thus, preventing this Court from efficiently articulating the rationale underlying its decision and providing a basis for Maternal Grandmother to determine the advisability of appealing that issue. This Court is left to speculate why Maternal Grandmother is challenging the determination, and which parts of testimony Maternal Grandmother is challenging. Accordingly, these issues should be waived in its entirety because they lack specificity for the trial court to identify and address the issue that Maternal Grandmother sought to raise.

## II. Even if Maternal Grandmother's issues complained of on appeal are not waivable, the trial court did not err in awarding Maternal Grandmother partial physical custody of the child, D.J.

In her first issue, Maternal Grandmother claims that the trial court erred in awarding primary physical custody to Mother and Father because neither Mother nor Father presented proof of having a job or a stable place of residence. Contrary to Maternal Grandmother's claim, Mother and Father's credible testimony provided that Mother and Father currently reside together, and that Father does in fact have a stable source of income.

8

During Mother's testimony, this Court asked Mother "you are saying you and dad live together, correct," Mother responded "[y]es." (N.T., p. 16, 13-14). When asked when Mother and Father moved to their current address on Rowan Street, Mother responded stating "[t]he end of 2022" and further clarifies that they moved in "September." (N.T., p. 21, 9-12, 16). On cross-examination, Maternal Grandmother's then-counsel asked Mother, "[n]ow the address that we have on record for you and [Father] is 1617 Rowan Avenue or Rowan Street, correct?" Mother answered, "[y]es." (N.T., p. 39, 11-13). Counsel then further asked Mother, "[a]nd the occupants that you indicate reside there are [D.J.], [A.J.], [Father], [Father's brother], as well as you." to which Mother replied "[m]m-hmm." (N.T., p. 39, 14-16). Maternal Grandmother's then-counsel questioned Mother again stating "[s]o you always reside at ... Rowan Avenue?" Mother responded, "[y]es." (N.T., p. 48, 13-14). Counsel questioned Mother on the house further asking "[D.J.] has his own bedroom," to which Mother answered "[y]es." (N.T., p. 58, 9-10). When counsel asked Mother "[t]hat's a two-bedroom home," Mother provided that "[i]t's a three bedroom." (N.T., p. 58, 11-12). During Father's testimony, Father supported Mother's testimony that he does live with Mother and the children, and Father further provided that the parties have lived at the particular house for "almost two years." (N.T., p. 71, 5-9).

With regard to job stability, Mother and Father credibly testified to the fact that Father is currently a home healthcare aid for his mother. The issue of Father's occupation first came up during Mother's cross-examination by Maternal Grandmother's then-counsel. Counsel asked Mother, "[Father] is not currently working, is he...?" to which Mother responded, "[y]es, he is." (N.T., p. 59, 10-12). When asked where he is currently working, Mother provided "[h]ome healthcare for his mother." (N.T., p. 59, 14). During Father's testimony, Father provided that he is currently working as a home health aid, and that his hours are from "eight in the morning until

9

four in the afternoon." (N.T., p. 75, 10-18). Father further provided that he has been working this job "for eight years. Almost nine." (N.T., p. 75, 20-21).

Maternal Grandmother testified that to her knowledge, Mother does not have a permanent address. (N.T., p. 119, 20-22). However, his Court found that the testimony provided by Mother and Father, and supported by the cross-examination by Maternal Grandmother's then-counsel, to be credible. Mother and Father's testimony supports this Court's finding that Mother and Father do currently have a stable place of residence, and that Father does have a stable job. While reviewing the child custody factors on the record, this Court found in favor of Mother and Father with regard to stability. This Court provides that "there is a home investigation as to the current address that [Mother] and [Father] live together. There is credible testimony that [Mother] and [Father] have always been together and live together." (N.T., p. 158, 6-9).

Maternal Grandmother's second, third, fourth, fifth, and sixth allegations of error all concern the amount of weight this Court gave to the enumerated custody factors. Maternal Grandmother attempts to prescribe the amount of weight this Court should have given to each factor. In this regard, Maternal Grandmother's bases are contrary to law. *Robinson v. Robinson*, 645 A.2d 836, 838 (Pa. 1994); *A.V. v. S.T.*, 87 A.3d 818, 820 (Pa.Super. 2014); *S.M. v. J.M.*, 811 A.2d 621, 623 (Pa.Super. 2002) (The parties cannot dictate the amount of weight the trial court places on evidence.). This Court gave consideration to all of the statutory factors, specifically addressing and summarizing each of the statutorily enumerated custody factors, and providing that the custody decision was based on those considerations. (N.T., pp. 156-162). Further, as provided in 23 Pa.C.S. § 5323(d), the court shall delineate the reasons for its decision on the record in open court or in a written opinion or order. This Court provided the basis for the

10

decision by reciting all factors under Pa.C.S. § 5328, along with this Court's findings under each factor, at the end of the trial.

In her second issue, Maternal Grandmother claims that this Court erred by failing to consider all relevant factors to determine the best interest of the D.J.'s safety, mental health, emotional needs and well-being before making a custody determination. This Court carefully considered a range of factors related to D.J.'s safety, mental health, emotional needs, and overall well-being. While Maternal Grandmother argues that not all factors were considered, this Court's decision indicates that this Court weighed all factors in relation to D.J.'s best interest. (N.T., pp 156-162). This Court adhered to the requirements set forth in Pa.C.S. § 5328, which outlines the factors to consider in determining the best interest of the child, which includes the safety, emotional needs, and the overall well-being of the child. This Court's findings indicate a careful evaluation of these factors, demonstrating that it did not overlook any pertinent considerations in its determination. This Court put the custody factors on the record, going through each and evaluating which party the factor favors along with the supporting evidence presented. (N.T., pp. 156-162).

In her third issue, Maternal Grandmother claims that this Court erred in its decision to remove D.J., from Maternal Grandmother's home because the decision was arbitrary and not supported by evidence presented during the trial. Under 23 Pa.C.S. § 5323, the trial court has the authority to make custody determinations based on evidence that reflects the best interests of the child. The court's decision to award Mother and Father primary physical custody of D.J. was based on sufficient and credible evidence regarding his welfare under the sixteen custody factors, which supports that the decision was neither arbitrary nor capricious. (N.T., pp. 156-162).

11

In her fourth issue, Maternal Grandmother claims that this Court erred in failing to create a full and complete record in order to fully address D.J.'s best interests. As outlined in 23 Pa.C.S. § 5328, the trial court is required to create a record that accurately reflects the proceedings. The court maintained a thorough record throughout the trial, ensuring that all relevant evidence and testimony were documented. After hearing all of the evidence presented at trial, this Court evaluated all sixteen custody factors on the record. (N.T., pp. 156-162).

In her fifth issue, Maternal Grandmother claims that this Court erred in failing to address and appropriately weigh the testimony of Maternal Great Grandmother with regard to the allegations of domestic violence between Mother and Father at their place of residence. (N.T., p. 157, 10-23). This Court acknowledged the testimonies Maternal Great Grandmother regarding allegations of domestic violence but weighed it against other evidence presented. This Court provided that,

> "... there's been lots of allegations thrown around about abuse. [Mother] and [Father] deny domestic violence between themselves. There [are] allegations that there has been some domestic violence between [Maternal Grandmother] and [Mother].... I don't have any founded DHS reports. I don't have any police reports to back any of that up. Anything that has been thus far resolved by DHS has been unfounded... including allegations of domestic violence between [Mother] and [Father].... I don't think that it rises to the level of abuse and I'm not finding that there is an ongoing risk of harm to [D.J.]" (N.T., p. 157, 10-23).

This Court is tasked with determining the credibility and relevance of testimony, and its decision reflects a balanced consideration of all evidence without giving undue weight to any single source. While Maternal Great Grandmother's testimony was taken into consideration, the court is not required to give it undue weight if other evidence is deemed more relevant to D.J.'s best interests. Further, Mother testified credibly that there was no history of domestic violence between Mother and Father. (N.T., p. 16, 15-18; N.T., p. 40, 4-8; N.T., p. 55, 4-6). Father also

12

testified credibly that there has not been any domestic violence between himself and Mother. (N.T., p. 70, 9-10).

In her sixth issue, Maternal Grandmother claims that this Court erred in failing to address and give appropriate weight to the testimony and evidence presented regarding Mother and Father's inability to co-parent with one another. This issue is waived as Maternal Grandmother had not raised the issue of Mother and Father's ability to co-parent during the trial on August 12, 2024. Further, the ability to co-parent is not one of the sixteen enumerated custody factor that the court must consider when awarding physical custody under 23 Pa.C.S. § 5328.

In her seventh issue, Maternal Grandmother claims that this Court erred in violating Maternal Grandmother's rights to a fair trial by demonstrating favoritism towards Mother and Father by stating "I got you" during the trial, indicating a predetermined decision to award Mother and Father custody of D.J. Any remarks attributed to this Court, such as "I got you," should be contextualized within the broader proceedings. At certain points of testimony, this Court stated, "[g]ot it" or "I got it" to verbalize only an understanding of the context of the testimony, not a judgement about the testimony. Further, this Court made these types of remark to all parties, including Maternal Grandmother. When Maternal Grandmother was testifying to phone calls and FaceTimes with D.J., this Court asked her whether Father was allowed to call Maternal Grandmother to initiate communication with D.J. Maternal Grandmother stated, "[n]o. [D.J.] has a phone" to which this Court responded, "[o]kay. Got it." (N.T., p. 149, 2-5). Again, this comment was only demonstrating an understanding of the testimony, not a judgment about the testimony. At no point did this Court state "I got you" to any party. The court's ultimate decision was based on a thorough evaluation of the evidence and without bias to any one party, maintaining the integrity of the trial.

13

In her last issue, Maternal Grandmother claims that this Court erred in failing to consider the impact of the new custody on D.J.'s mental stability after living with Maternal Grandmother for the whole of his seven years. There was conflicting testimony as to whom D.J. resided with. However, this Court found that Mother and Father credibly testified that D.J. had resided with them from birth until Maternal Grandmother was awarded sole physical custody in 2022, at a hearing in which Mother and Father failed to appear. When asked "[b]ut you always lived with [D.J.]," Mother answered "[y]es." (N.T., p. 22, 11-14). When asked "how long did you live in a house without [D.J.]," Mother answered "[D.J.] was what? Five, four? Five," providing support for the timeline of the 2022 Order granting Maternal Grandmother sole physical custody. (N.T., p. 22, 21-23).

Although this Court did consider D.J.'s mental stability after living with Maternal Grandmother, this Court also evaluated the potential benefits of the new custody arrangement for D.J. to be with Mother, Father, and A.J. This Court found it compelling to allow Mother and Father to continue living as an intact family. This Court acknowledged that "these two boys have each other" with regard to D.J. and A.J. (N.T., p. 159, 3-8). In accordance with 23 Pa.C.S. § 5328, the court weighed the potential advantages of this new custody arrangement, ultimately prioritizing D.J.'s best interests and future well-being in the decision-making process. This Court stated that "I don't think anybody's actually… trying to keep D.J. away from anyone." (N.T., p. 157, 7-9). Further, this Court found that "[D.J.] seems to be emotionally taken care of at all – at both households." (N.T., p. 160, 20-21). This Court recognized the existence of an emotional bond between Maternal Grandmother and D.J. Thus, this Court awarded Maternal Grandmother partial physical custody every other weekend from Fridays after school/camp to

14

Monday morning, drop off at school/camp to allow Maternal Grandmother to continue to have some custodial time with D.J.

## CONCLUSION

After hearing testimony from all parties and reviewing the relevant evidence, the Court found that the best interest of D.J. would be to award Mother and Father primary physical custody and award Maternal Grandmother partial physical custody every other weekend. The majority of the errors of which Maternal Grandmother complains of on appeal lack any basis in the evidentiary record, applicable statutes, or case law. In these issues, Maternal Grandmother fails to set forth specific, appealable issues that she is seeking review of in a concise manner.

For the foregoing reasons, it is respectfully requested that the Order of August 12, 2024 be affirmed.

BY THE COURT:

_Betsy Wahl_

**Honorable Betsy Wahl**

DATE: _10/18/2024_
I hereby certify that the foregoing
is a true copy of the original as same
appears in the records of this Court.

_Markos J. Cooper, Esq._
CLERK OF FAMILY COURT

15